Jason VILLANO, Plaintiff-Appellant,

v.

 CITY OF BOYNTON BEACH, a municipality, J. Scott Miller, individually, as the former City Manager for the City of Boynton Beach, et al., Defendants-Appellees.

Jason Villano, Plaintiff-Appellee,

v.

    J. Scott Miller, individually and as the former City Manager for the City of Boynton Beach, et al., Defendants,

City of Boynton Beach, a municipality, Defendant-Appellant.

Nos. 99-4318, 99-14277 and 00-10012.

United States Court of Appeals,

Eleventh Circuit.

June 27, 2001.

Appeals from the United States District Court for the Southern District of Florida. (No. 96-08559-CV-KLR), Kenneth L. Ryskamp, Judge.

Before EDMONDSON, BLACK and McKAY[*], Circuit Judges.

McKAY, Circuit Judge:

Appellant brought separate appeals challenging the reduction of his attorney fee award and seeking sanctions against Appellees for misconduct during trial. Those issues have been consolidated on appeal.

Appellant prevailed in his civil rights action against the City of Boynton Beach and its police officer. The action arose from an encounter Appellant had in 1994. Out of uniform and driving an unmarked car, Officer Bateson had followed Appellant's car in a way that caused Appellant to believe he was in danger of being robbed. While stopped at an intersection, Appellant saw the unidentified pursuer approaching him with a drawn gun. In a defensive act, he backed into the officer's vehicle and drove away to seek police protection. When stopped by a Fort Lauderdale officer, Appellant relayed his belief that someone was trying to rob him. Officer Bateson then arrived and identified himself as a police officer from Boynton Beach. He claimed to have stopped Appellant after observing him commit a burglary on a van and explained that Appellant had slammed into his vehicle and fled the scene. Appellant was arrested and charged with burglary of a vehicle and aggravated assault on a police officer. The charges were eventually dropped. In a separate matter,

---

[*]Honorable Monroe G. McKay, U.S. Circuit Judge for the Tenth Circuit, sitting by designation.

Officer Bateson was convicted of robbery.

After the charges were dropped, Appellant brought a civil rights claim under 42 U.S.C. § 1983, alleging false arrest and malicious prosecution. In addition to the individual officers, Appellant sued the City of Boynton Beach on the theory that the City had a custom or policy of failing to properly train or supervise its police officers. There were other named defendants that were dismissed or severed from the case before the final disposition. From the outset, the core of the litigation was the City's failure to train its officers and the officer's unconstitutional conduct toward Appellant.

After a seven-day trial, a jury determined that both the City of Boynton Beach and Officer Bateson had violated Appellant's Fourth and Fourteenth Amendment rights. Several of Appellant's original claims were either severed or dismissed before the case was submitted to the jury, but the jury found for Appellant on all claims submitted. The jury awarded only $15,000 of the requested $174,741 in compensatory damages. Additionally, Appellant received a $25,000 punitive damages award against Officer Bateson.

Having obtained a favorable verdict, Appellant filed a motion for attorney fees and costs under 42 U.S.C. § 1988. The district court expressed the opinion that it would not have found for Appellant on his claim against the City, but acknowledged that the jury verdict entitled Appellant to an award of fees and costs. The court referred the fee petition to a magistrate judge with direction to reduce the award on the ground that counsel had spent many hours on unsuccessful claims. The magistrate judge conducted an evidentiary hearing and entered a report and recommendation reducing the amount as directed. Over Appellant's objection, the district court entered an order affirming the magistrate judge's report. This appeal followed.

## I. AWARD OF ATTORNEY'S FEES AND COSTS UNDER § 1988

The parties understand our standard of review. "This court reviews an award of attorney's fees for abuse of discretion; nevertheless, that standard of review still allows us to closely scrutinize questions of law decided by the district court in reaching a fee award." *Clark v. Hous. Auth. of Alma,* 971 F.2d 723, 728 (11th Cir.1992). It is undisputed that Appellant is a prevailing party entitled to a reasonable award of fees and costs under 42 U.S.C. § 1988. The current dispute is about the size of the award only.

Ultimately, the computation of a fee award is necessarily an exercise of judgment, because "[t]here is no precise rule or formula for making these determinations." *Hensley v. Eckerhart,* 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Extending deference to the district court's factual findings, our review concentrates on the application of the legal standards that have been developed to guide the discretionary

nature of fee determinations. *See Clark,* 971 F.2d at 728.

The district court concluded that Appellant obtained only limited success and spent many hours on unsuccessful claims. Appellant argues that he obtained substantial relief and deserves full compensation for vindicating an important public interest. He asserts that the time invested was necessary to the outcome achieved. Appellees defend the district court's reduction of the fee award, arguing that the size of the compensatory damage award evidences that the success Appellant obtained was patently limited.

Among the many considerations a court must entertain when calculating a § 1988 award, "the most critical factor is the degree of success obtained." *Hensley,* 461 U.S. at 436, 103 S.Ct. 1933. This appeal presents squarely the question of what constitutes "success" in a complex civil rights case. We turn to that first, relying on prior cases that have addressed that issue.

The thrust of Appellant's argument is that, in a complex civil rights case, "[a] jury verdict that a plaintiff's constitutional rights have been violated, by itself, represents success on a significant issue in the litigation." Aplt. Brief at 15. Therefore, Appellant argues, the verdict alone justifies a full award of fees and costs. Appellant elaborates that the public as a whole benefits from civil rights litigation, as distinguished from a private tort suit where only the individual plaintiff benefits. *See City of Riverside v. Rivera,* 477 U.S. 561, 574, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986); *see also Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Based on that distinction between private and public benefit, he concludes that the amount of damages awarded do not reflect the degree of success, "[w]hether the damage award is $6,000,000.00 or $40,000.00." Aplt. Brief at 15. His ultimate assertion is that "[i]n this case, the amount of the award is irrelevant in justifying the limited success argument." Reply Brief at 3.

Appellant states the law correctly to the extent that success in a civil rights claim is measured differently than success in a private tort claim. Indeed: "Congress has elected to encourage meritorious civil rights claims because of the benefits of such litigation for the named plaintiff and for society at large, irrespective of whether the action seeks monetary damages." *Blanchard v. Bergeron,* 489 U.S. 87, 96, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). Moreover, the Supreme Court has articulated the distinction advanced by Appellant: "Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." *Riverside,* 477 U.S. at 574, 106 S.Ct. 2686. That distinction, however, does not lead to Appellant's conclusion that monetary damages are, as a matter of law, irrelevant in determining the degree of success obtained in a civil rights action.

Taken to its logical limit, Appellant's argument would make § 1988 awards full and automatic for plaintiffs who obtain a jury verdict that a constitutional right was violated. That argument does not withstand analysis under existing case law. It is well established that where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley,* 461 U.S. at 436, 103 S.Ct. 1933. That principle is routinely applied in cases where plaintiffs have proven a violation of a constitutional right but failed to achieve the full measure of success sought. *See Popham v. City of Kennesaw,* 820 F.2d 1570, 1580 (11th Cir.1987); *Foster v. Bd. of Sch. Comm'rs,* 810 F.2d 1021, 1024 (11th Cir.1987). There is no room to doubt that a court may reduce a § 1988 award when the degree of success obtained is limited, even when a plaintiff obtains a favorable jury verdict that a constitutional right was violated. "The amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded under § 1988." *Riverside,* 477 U.S. at 574, 106 S.Ct. 2686. Without further discussion, we reject the arguments that the size of an award is irrelevant as a matter of law and that a jury verdict alone proves success to have been complete.

Although we reject Appellant's categorical argument, it is true that success in a civil rights case "cannot be valued solely in monetary terms." *See Riverside,* 477 U.S. at 574, 106 S.Ct. 2686. Furthermore, when determining the degree of success obtained by a civil rights plaintiff, a court must be careful not to place "undue emphasis on the modest money damages that were found by the jury" because successful civil rights actions vindicate a public interest. *Williams v. Thomas,* 692 F.2d 1032, 1038 (5th Cir.1982). In this circuit, we have previously explained that a court that reduced a § 1988 award "would have erred had it ignored the fact that [the plaintiff in a civil rights action] benefitted the public interest by vindicating his constitutional rights." *Popham,* 820 F.2d at 1580. Appellant asserts that the district court committed that error here.

After acknowledging that Appellant was entitled to an award, the district court directed the magistrate judge to reduce the award "in light of the many hours Villano's counsel spent litigating his multitudinous unsuccessful claims." Record, Vol. 8, Doc. 267, at 15. The magistrate judge did not independently evaluate whether Appellant was entitled to a full award. *See* Record, Vol. 8, Doc. 295, at 4. Concerned that the judges were ignoring a fundamental aspect of his success, Appellant repeatedly asserted that his entitlement to fees derived from the fact that he created a public benefit by prevailing against a municipal defendant. *See Plaintiff's Motion for Clarification Re: Court's Omnibus Order and Order of Reference,* Record, Vol. 8, Doc.

269, at 4; *Plaintiff's Reply to Defendant City of Boynton Beach's Response in Opposition to Plaintiff's Motion for Attorney Fees and Costs,* Record, Vol. 8, Doc. 264, at 5. Because Appellant's assertion accurately states the law governing § 1988 awards, we have carefully reviewed the record to ascertain whether the district court considered that principle-that a public benefit inures when a plaintiff prevails against a public body in civil rights litigation.

Neither the district court nor the magistrate judge directly addressed the public benefit principle. The judges may have contemplated it, as suggested by the following citation to *Riverside* in the district court's order of reference, 477 U.S. at 575, 106 S.Ct. 2686: "A rule that limits attorney's fees in civil rights cases to a portion of the damages awarded would seriously undermine Congress's purpose in enacting § 1988." Record, Vol. 8, Doc. 267, at 12. However, for the following reason, we conclude that the district court and magistrate judge failed to account for public benefit when determining the actual extent of Appellant's success.

The district court framed Appellant's success by comparing it to the success obtained by the plaintiff in *Popham,* 820 F.2d at 1579-80. Record, Vol. 8, Doc. 267, at 12. This comparison belies the fact that Appellant received a greater measure of success than the *Popham* plaintiff. Although a reduction of a § 1988 award was upheld in *Popham,* the reasons cited therein do not justify a reduction in this case. There, the plaintiff prevailed on only one of eight claims submitted to the jury and received a compensatory damage award of $30,000 after requesting $2,000,000. *Popham,* 820 F.2d at 1579-80. In comparison, Appellant obtained money damages ($40,000) closer to the amount requested ($174,741) and prevailed on every claim submitted to the jury. We clarify that, although those differences are relevant, they are not individually determinative and, if those were the only comparisons to be made, we would defer to the judgment of the district court. *See, e.g., Perkins v. Mobile Hous. Bd.,* 847 F.2d 735, 739 (11th Cir.1988) (upholding reduction of lodestar fee amount where plaintiff did not prove constitutional violation, did not prevail on every claim, and obtained only 1/25th of the monetary recovery sought).

However, there is an additional factual distinction between this case and *Popham.* Although both plaintiffs sued a municipal defendant, only Appellant prevailed on that difficult and important claim. *See Popham,* 820 F.2d at 1579. That distinction carries legal significance because vindicating a constitutional right against a municipal defendant heightens the public benefit created by a lawsuit. *See Riverside,* 477 U.S. at 574-76, 106 S.Ct. 2686 (discussing the public benefit that inures from lawsuits that affect institutional

behavior); *Popham,* 820 F.2d at 1580 (deterrence of unconstitutional conduct by public officials benefits citizens' rights in the future). Public benefit is a distinct measure of success in civil rights actions and was a central aim of Appellant's litigation.

To avoid undermining the purpose of § 1988, a court must account for that distinct measure of success when calculating an award of fees and costs. *See Riverside,* 477 U.S. at 575, 106 S.Ct. 2686. The district court erred by relying on *Popham* where a party failed to prevail against a municipal defendant. As this circuit forecasted, we now hold that the district court erred in reducing the fee award while ignoring public benefit, which is an important measure of success. *See Popham,* 820 F.2d at 1580. Appellant is entitled to an award of fees and costs commensurate with the extent of success obtained. That success exceeds the degree recognized by the appealed award.

On appeal, Appellees' argument has focused primarily on the size of the compensatory damages that the jury awarded Appellant. Although we hold that the district court erred in reducing the fee award without considering a distinct measure of success, we clarify that the court did not err by considering the damage award as an indicator of success.

The relative importance of a money damage award must be determined on a case-by-case basis. For example, monetary damages will be wholly immaterial when a plaintiff seeks purely equitable relief. *See Hensley,* 461 U.S. at 430, 103 S.Ct. 1933 (citing *Stanford Daily v. Zurcher,* 64 F.R.D. 680 (N.D.Cal.1974), *aff'd,* 550 F.2d 464 (9th Cir.1977), *rev'd on other grounds,* 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978)). On the other hand, where compensatory damages constitute the primary relief sought and become the only relief obtained, a court is not beyond its discretion in considering the damages awarded as a relevant factor. *See Corder v. Brown,* 25 F.3d 833, 837 (9th Cir.1994). In any event, a court remains obligated to account for all distinct measures of success when determining whether success was limited.

Before turning our analysis to the actual computation of Appellant's award, we return to the reason for reduction articulated by the district court. The district court directed the magistrate judge to reduce fees because hours were spent litigating unsuccessful claims. *See* Record, Vol. 8, Doc. 267, at 12. The magistrate judge did not independently evaluate whether fees should be reduced. *See* Record, Vol. 8, Doc. 295, at 23. Appellant contends that his petition for fees and costs included only hours spent on successful claims or on claims that were interrelated to the litigation as a whole.

For purposes of § 1988 awards, the Supreme Court places primacy on the results obtained. *See*

*Hensley,* 461 U.S. at 435, 103 S.Ct. 1933. When the results achieved are excellent, "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.* Acknowledging that parties "in good faith may raise alternative legal grounds for a desired outcome," the Supreme Court has instructed that "the district court should focus on the significance of the overall relief obtained by the plaintiff." *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933. The conclusion follows: "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.*

Review of the record makes apparent that neither the district court nor the magistrate judge evaluated whether plaintiff's actual success constituted an excellent result, notwithstanding the fact that some claims were severed or dismissed. Moreover, given that neither judge acknowledged the public benefit that occurred from prevailing against a public body, their analysis would have been incomplete even if undertaken. Determining whether a plaintiff obtained excellent results is a required element of a § 1988 legal analysis. We direct the court to conduct that analysis on remand. *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933.

Appellant prevailed against both Officer Bateson individually and the City of Boynton Beach as a public body. By prevailing against the City, Appellant obtained a more excellent result than the district court expected, the court having commented that it would not have found for Appellant on his claim against the city. On remand, the district court must examine the qualitative value of those successes. *See Jane L. v. Bangerter,* 61 F.3d 1505, 1511 (10th Cir.1995). In doing so, the court needs to account for the vital role private litigation plays in the enforcement of civil rights, the difficulties involved in sustaining those lawsuits, the heightened importance of such lawsuits when the defendant is a public body, and the public benefit that occurs when those lawsuits ultimately vindicate a constitutional right.

If the court determines that the result obtained was an excellent result, then the award of fees "will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933. Whether hours were reasonably expended on litigation is a different question than whether hours were necessary to the litigation, the latter standard being the more exacting of the two.

We draw that distinction after determining that the magistrate judge applied a more exacting standard than simple reasonableness in evaluating which hours were compensable. The magistrate judge examined the extent to which time spent on additional claims contributed to the final judgment. *See Report and Recommendation,* Record, Vol. 8, Doc. 295, at 24. On a claim-by-claim basis, the magistrate judge gauged

whether an overlap between claims and the final judgment was sufficient to merit fees. *See* Record, Vol. 8, Doc. 295, at 27, 29. Using that methodology, the magistrate judge found not compensable the hours that Appellant had spent on various claims brought against defendants who were eventually dismissed from the case.

The magistrate judge's analysis is appropriate if Appellant's success is deemed limited, but is overly exacting if the results obtained are deemed excellent. In that case, all hours reasonably expended are compensable. *See Hensley,* 461 U.S. at 435, 103 S.Ct. 1933. Therefore, if on remand the court determines that Appellant obtained an excellent result in light of the public benefit created, the court must then reconsider the reasonableness of hours spent litigating related claims, even if those hours were ultimately unnecessary in light of the judgment finally obtained.

Having underestimated the extent of Appellant's success by failing to consider the associated public benefit, the magistrate judge reduced Appellant's lodestar fee amount from $77,000 to $69,300. *See* Record, Vol. 8, Doc. 295, at 31. We direct the court to reconsider this reduction and either allow the entire lodestar amount or lessen the reduction due to the fact that Appellant's success was greater than was contemplated by the original reduction.

A final matter to be reconsidered on remand is whether supplemental hours submitted by Appellant after the entry of judgment should be included in the award. The parties do not dispute that Appellant's original motion for fees and costs was timely submitted. Based on the hours spent working on post-trial motions and the litigation of fees and costs issues, Appellant submitted several supplements to his original petition. This matter is part of the appeal because the magistrate judge did not include in the award of fees and costs the hours contained in those supplements. Referring to Local Rule 7.3, the magistrate judge refused to consider the supplements.

District Court Local Rule 7.3 requires that motions for attorney's fees and costs "be filed and served within 30 days of entry of Final Judgment or other dispositive order." Record, Vol. 8, Doc. 295, at 7. The magistrate judge interpreted this rule to preclude all motions "filed after 30 days of entry of final judgment," extending that interpretation to supplementation of the original motion. *Id.* It is beyond dispute that "district courts remain free to adopt local rules establishing timeliness standards for the filing of claims for attorney's fees." *White v. New Hampshire Dep't of Employment Sec.,* 455 U.S. 445, 454, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982). However, we do not accept the magistrate judge's interpretation of the local rule under review;

moreover, we would find a rule that eviscerated a statutory right to fees and costs in conflict with federal law.

A prevailing party is entitled to reasonable compensation for litigating a § 1988 award. *See Jonas v. Stack,* 758 F.2d 567, 568 (11th Cir.1985). Additionally, post-judgment advocacy may generally be included in a § 1988 award. *See Mills by Mills v. Freeman,* 118 F.3d 727, 733-34 (11th Cir.1997). By limiting compensation to work performed before final judgment or within 30 days of the entry of judgment, the interpretation of Local Rule 7.3 urged by the magistrate judge and Appellee would eviscerate a portion of the statutory entitlement created by § 1988, namely, the entitlement to compensation for necessary post-judgment advocacy. A local rule, however, cannot eviscerate a statutory right.

For purposes of this review, we note that the rule allows submissions after "other dispositive orders." That language refutes the magistrate judge's conclusion that all motions must be filed within 30 days of the final judgment. In order to preserve the statutory right to fees and costs, we interpret the rule to allow supplements to be filed within 30 days after the entry of a post-judgment order ruling on a post-judgment motion. We conclude that the magistrate judge erred by refusing to consider the supplements to the § 1988 award. We direct the district court to correct that mistake on remand. Post-judgment litigation continued until the district court entered the order adopting the magistrate judge's Report and Recommendation on February 12, 1999. To the extent that the motions to supplement relate to work performed during this stage of the litigation, they are timely as late as thirty days after the February 12 order. If, however, the motions to supplement relate to matters disposed of by a judgment or order on which thirty days had already elapsed, we do not interfere with the court's prerogative to manage its docket by dismissing such filings.

In summation, we hold that the district court erred by ignoring a distinct measure of Appellant's success. After evaluating that success on remand, the district court must determine whether the results obtained were excellent. The outcome of that determination will dictate whether the court needs to reconsider the compensability of other hours invested in the litigation. In any event, the reduction of the lodestar must be reconsidered and the supplements to the original fee petition must be considered for the first time.

## II. CALCULATION OF § 1988 AWARD

Much of the argument on appeal turns on factual disputes about the calculation of the award. Appellant challenges the magistrate judge's reduction in his submitted hourly rate, number of hours, and costs. The original § 1988 petition requested $132,695 in fees and $36,094.08 in costs. After an evidentiary hearing, the magistrate reduced the regular hourly rate from $250 to $200, the travel hourly rate from $150

to $100, the number of regular hours spent on the litigation from 473 to 350, and the number of travel hours from 96.30 to 70. The reductions rendered a lodestar attorney fee award of $77,000.[1] After examining the cost statement, the magistrate judge reduced the cost award from the requested $36,094.08 to $25,000. We review each reduction in turn.

As the Supreme Court has recognized, "determining an appropriate 'market rate' for the services of a lawyer is inherently difficult." *Blum v. Stenson,* 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). "In seeking some basis for a standard, courts properly have required prevailing attorneys to justify the reasonableness of the requested rate or rates." *Id.* at 896 n. 11, 104 S.Ct. 1541. The magistrate judge conducted an evidentiary hearing and considered Appellant's justifications for the requested rates, relying on the legal framework established in *Norman v. Hous. Auth. of Montgomery,* 836 F.2d 1292, 1299-1301 (11th Cir.1988). After considering the prevailing rates in the market and the skill and reputation of Appellant's counsel, the magistrate judge recommended lower hourly rates than were requested. *See* Record, Vol. 8, Doc. 295, at 13. We do not find legal error in the magistrate judge's application of *Norman,* and Appellant's arguments fail to articulate anything more than a factual challenge.

Reviewing the facts, we note that Appellant's expert witness suggested that a reasonable fee would range from $200-$350 per hour. Although the hourly rates awarded are apparently at the bottom end of the reasonable scale, they are, nonetheless, within that range. "A district court's determination of a reasonable fee will not be upset absent an abuse of discretion." *Popham,* 820 F.2d at 1581. We have reviewed the record carefully and do not find an abuse of discretion in the determination of hourly rates.

A statement of hours was attached to Appellant's original motion for fees and costs. After reviewing that statement, the magistrate judge determined that it did "not provide sufficient detail" in that it "does not clearly identify the subject matter of each time expenditure." Record, Vol. 8, Doc. 195, at 14. Therefore, the magistrate judge directed Appellant to amend his petition and provide greater particularity for the hours requested. In response, Appellant submitted a key to identify the claims represented by each entry of billable hours. Even with the key, the magistrate judge found the statement of hours "too vague to discern reasonableness and legitimacy." Record, Vol. 8, Doc. 295, at 16. On that ground, the magistrate judge concluded that the requested hours should be reduced by twenty-five percent.

There is a line of cases in this circuit establishing that "when hours are disallowed the court should

---

[1]This amount was then reduced to $69,300 based on the court's finding of limited success.

identify the hours disallowed and explain why they are disallowed." *Loranger v. Stierheim,* 10 F.3d 776, 783 (11th Cir.1994), *citing Norman,* 836 F.2d at 1304. However, we have also recognized that in cases "[w]here fee documentation is voluminous," it will not be feasible to require a court to "engage in such a precise review." *Loranger,* 10 F.3d at 783. Appellant submitted 569.30 hours for compensation. Those hours are extensive enough that we do not expect the district court or the magistrate judge to conduct an hour-by-hour analysis in this case.

After reviewing the record, we do not find legal error in the reduction of Appellant's hours. "Although the party seeking fees has the burden of supplying the court with detailed evidence from which the court can determine a reasonable fee, where that party presents inadequate documentation the court may determine a reasonable award based on its own experience." *Mills by Mills,* 118 F.3d at 734. The magistrate judge found the evidence submitted was insufficiently detailed and determined that a reduction was necessary to offset possible redundancy in the hours submitted. We do not find an abuse of discretion in those conclusions.

Appellant sought taxation of $36,094.08 in costs. As was the case in the statement of hours, the magistrate judge found the statement of costs to lack the particularity that would allow the court to determine the reasonableness of the costs. This circuit has made explicit that "the recoverability of costs is determined by the necessities of the case; even relatively large or unusual costs may be taxed when they are reasonably incurred; and there is no bar to complete recovery." *Dowdell v. City of Apopka,* 698 F.2d 1181, 1191 (11th Cir.1983). The magistrate judge correctly applied the law. We do not find an abuse of discretion in the conclusion that $25,000 was a reasonable reimbursement.

### III. MOTION FOR SANCTIONS

The final issue in this appeal is Appellant's pursuit of sanctions against Appellee for misconduct during trial. The primary aspect of the alleged misconduct is that Appellee produced documents at trial that had been requested by Appellant but never provided. The district court found that to be true, but denied the motion for sanctions on the ground that Appellant had failed to prove that the misconduct prejudiced him. Appellant argues that the reduced compensatory damage award is strong evidence of the prejudice that resulted.

Before we can address the merits of the motion for sanctions, we must first assess our jurisdiction over the matter. *See* Fed.R.Civ.P. 12(h)(3). This is the second time Appellant has come to the Court of

Appeals seeking reversal of the denial of his motion for sanctions. We track the history of this case to make that point clear and frame the jurisdictional issue this panel now confronts.

Appellant filed his original motion for sanctions on March 17, 1998. The motion was denied as part of an omnibus order entered by the district court on July 7, 1998. Appellant timely filed a motion for rehearing. Without notifying Appellant, the district entered an order on August 26, 1998, denying the motion for rehearing on the question of sanctions.

On February 11, 1999, the district court affirmed the report and recommendation of the magistrate judge and entered the judgment that forms the basis of the attorney's fees and costs' portion of this appeal. Not knowing that the court had already ruled against his motion for rehearing on sanctions, Appellant was surprised to discover that the February judgment did not include a disposition on that issue. Appellant immediately contacted the clerk of court. On March 4, 1999, the clerk of court notified Appellant that the August 26, 1998 order had already disposed of the sanctions issue. The district court admitted that the clerk of court had failed to notify Appellant when that order entered, and in total had committed more than a mere technical error because the court's conduct prevented Appellant from being able to file a timely appeal. By this time, the 180-day time limit for appeal had expired. *See* Fed. R.App. P. 4(a)(6).

On March 8, 1999, Appellant filed with the district court a motion for leave to file a notice of appeal on the August order to which he joined a proposed notice of appeal. The district court granted that motion. This court, however, dismissed the appeal on August 31, 1999, because it had not been timely filed. Appellant filed a motion for rehearing in which he argued the same equities he urges to us now. The motion for rehearing was denied.

After his case was dismissed by the court of appeals, Appellant returned to the district court and filed a motion for relief under Fed.R.Civ.P. 60(b), making the same equitable arguments before that court. The district court granted relief from the August order and entered a new order on October 5, 1999. This appeal followed Appellant's filing of a timely notice of appeal.

Whether Rule 60(b) can by employed by a district court to enable the filing of a timely appeal is a controversial question. *See generally Useden v. Acker,* 947 F.2d 1563, 1570-71 (11th Cir.1991), *cert. denied,* 508 U.S. 959, 113 S.Ct. 2927, 124 L.Ed.2d 678 (1993). The general rule is that Rule 60(b) "does not sanction the use of this tactic for the naked purpose of enabling the filing of a timely appeal." *Id.* (citing *Tucker v. Commonwealth Land Title Ins. Co.,* 800 F.2d 1054, 1056 (11th Cir.1986) (per curiam)). However, "Rule

60(b) is an appropriate escape valve" in certain cases. *Useden,* 947 F.2d at 1570. The issue is further complicated by the fact that, since Congress amended the Rule 4 deadline provision in 1991, subsequent cases have held that the 180-day limitation is an "outer limit." *See, e.g., Zimmer St. Louis, Inc. v. Zimmer Co.,* 32 F.3d 357, 360 (8th Cir.1994). Indeed, the most recent decision on this issue concludes that the one-time practice of enabling a timely appeal "has been rendered obsolete and inapplicable ... by the 1991 addition of Rule 4(a)(6)." *In re Stein,* 197 F.3d 421, 426 (9th Cir.1999).

Whether the Eleventh Circuit will join the circuits that have already addressed the effect of the 1991 addition to Rule 4 is a question for another case. Even if Rule 60(b) can enable a timely appeal, Rule 4 notwithstanding, we hold today that it cannot be employed to breathe second life into an appeal that has already been taken and dismissed by the appellate court. Appellant chose to file a patently untimely notice of appeal and took his chances by arguing the equities to the appellate court.

That path was not Appellant's only option. Instead, Appellant could have first pursued Rule 60(b) relief from the district court judge. Thereafter, if the district court had granted the motion, vacated the original order, and entered a new order from which Appellant appealed, we would then face squarely the question of whether to join our sister circuits in concluding that the 1991 additions to Rule 4 preclude that series of events.

However, because Appellant proceeded directly to the appellate court, we face a different constraint. "[I]t is the firmly established rule of this Circuit that each succeeding panel is bound by the holding of the first panel to address an issue of law, unless and until that holding is overruled en banc, or by the Supreme Court." *United States v. Hogan,* 986 F.2d 1364, 1369 (11th Cir.1993). A panel of this circuit already confronted the equities implicated by Appellant's appeal. Whether to allow Rule 60(b) to enable a timely appeal is a purely equitable decision, and the equities we would necessarily consider in determining whether to review this appeal are the same equities already rejected by another panel of this court. Therefore, that issue has been decided.

Appellee filed a motion to dismiss appeal number 99-14277. We do not address the merits of the sanctions issue nor do we take up the Rule 60(b) question because that motion to dismiss is granted.

Having reviewed all the issues on appeal, we affirm in part, reverse in part, and remand to the district court for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

EDMONDSON, Circuit Judge, concurring in part and dissenting in part:

I would affirm the district court's decisions.