[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-14227
Non-Argument Calendar

_____

D.C. Docket No. 1:08-cv-02930-TWT


M.H., a minor child, by and through his
mother and legal guardian, Thelma
Lynah, et al.,

Plaintiffs-Appellees,

versus

COMMISSIONER OF THE GEORGIA
DEPARTMENT OF COMMUNITY HEALTH,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(July 27, 2016)

Before TJOFLAT, ROSENBAUM, and JILL PRYOR, Circuit Judges.

PER CURIAM:

This appeal arises out of an award of attorneys' fees under 42 U.S.C. § 1988. Plaintiffs-Appellees are medically fragile children who suffer from serious conditions that, under the Early and Periodic Screening, Diagnostic and Treatment ("EPSDT") provision of the Medicaid Act and Title II of the Americans with Disabilities Act ("ADA"), entitle them to in-home nursing services.[1] The Georgia Department of Community Health ("DCH") offers these services to Plaintiffs and children like them under the Georgia Pediatric Program ("GAPP"). In the underlying suit, Plaintiffs successfully blocked DCH from reducing their hours of nursing care and from evaluating requests for nursing care using criteria other than medical necessity. Plaintiffs sought attorneys' fees for their efforts, and the district court awarded them $837,847.50. Finding no abuse of discretion in the district court's award, we affirm.

## I. BACKGROUND

### A. Plaintiffs' Relief

The district court's docket for this case lists 234 entries between 2008 and 2015. Those entries include seven hearings and a three-day bench trial. Essentially, Plaintiffs sought to prevent DCH from reducing their hours of nursing

---

[1] Plaintiffs M.H., S.R., J.M., R.E., and Z.R. brought claims in this litigation. Plaintiffs S.R. and J.M. accepted offers of judgment from DCH in 2013, Plaintiff R.E. passed away in 2014, and Plaintiff Z.R. became ineligible to receive EPSDT services when he turned 21 years of age in 2014.

care. Early in the proceedings, the district court determined that "a policy of not providing services where it is medically necessary is inconsistent with the Medicaid Act . . . ." Despite the district court's clear pronouncement on this issue, DCH continued reducing Plaintiffs' hours of care. As a result, Plaintiffs had to move again and again for injunctive relief to preclude DCH from doing so. In total, the district court granted Plaintiffs three temporary restraining orders, two preliminary injunctions, three permanent injunctions, and a declaratory judgment.

The district court issued these injunctions at critical moments for Plaintiffs. For example, one order enjoined DCH to approve 24-hour post-surgical care for six to eight weeks while Plaintiff M.H. was in a body cast. To put the court's relief into perspective, DCH had offered Plaintiff M.H. 24-hour care for a mere three days. Similarly, in 2012, the district court intervened on behalf of Plaintiff Z.R. when DCH tried to cut back on the hours of care he had been receiving for the prior nine years.

## B.    Summary Judgment

In 2013, the district court ruled on and granted DCH's Motion for Summary Judgment on seven of Plaintiffs' nine remaining claims. The court found, for example, that Plaintiffs had failed to cite any evidence that DCH had violated its duty to inform families of the scope of services available to them under EPSDT. On the other claims—claims largely attacking DCH's procedures for reviewing

3

requests for care—the court similarly determined that Plaintiffs had failed to provide evidence of harm or wrongdoing.  Importantly, though, the court denied summary judgment on Plaintiffs' central, substantive claims under Medicaid and ADA, concluding that a determination of the number of medically necessary nursing hours Plaintiffs required presented a question of material fact.  The district court ultimately resolved these claims in Plaintiffs' favor at a bench trial.  So—critical to this case—the claims decided in DCH's favor did not affect Plaintiffs' ultimate and core relief: safeguarding the children's hours of nursing care from DCH's improper reductions.

## C.     Plaintiffs' Attorneys' Fees

After Plaintiffs succeeded at the bench trial on their claims under Medicaid and ADA, they moved to recover attorneys' fees under 42 U.S.C. § 1988 (The Civil Rights Attorney's Fees Awards Act of 1976) (the "Act").  The Act allows a plaintiff to recover attorneys' fees if the plaintiff is a "prevailing party" in a suit seeking to privately enforce a plaintiff's civil rights. 42 U.S.C. § 1988 (1976).  After the parties submitted briefing, the district court awarded $837,847.50 in attorneys' fees.  That figure accounted for both Plaintiffs' voluntary reduction of hours from 2,391.65 to 2,241.125 and the court's further reduction of those hours by ten percent for claims dismissed early in the suit.

On appeal, DCH does not dispute that Plaintiffs were a prevailing party and thus entitled to attorneys' fees. Instead, DCH disputes how the district court calculated the hourly rate and the reasonable number of hours Plaintiffs' counsel expended on the litigation. DCH argues that Plaintiffs did not obtain excellent results in the litigation and that the district court's order does not allow us to meaningfully review the hourly rates and the number of hours claimed.

## II.  STANDARD OF REVIEW

We review a district court's award of attorneys' fees under the abuse-of-discretion standard. Under this standard, the district court enjoys "a range of choice . . . , so long as that choice does not constitute a clear error of judgment." *United States v. Kelly*, 888 F.2d 732, 745 (11th Cir. 1989). Still, we "closely scrutinize questions of law decided by the district court in reaching a fee award," *Clark v. Hous. Auth. of City of Alma*, 971 F.2d 723, 728 (11th Cir. 1992), and require that the district court "articulate its rulings in sufficient detail to enable us to accomplish a meaningful review." *Adams v. Mathis*, 752 F.2d 553, 554 (11th Cir. 1985).

## III.  ANALYSIS

Under 42 U.S.C. § 1988, a prevailing party is entitled to recover attorneys' fees. 42 U.S.C. § 1988 (1976). Designed to incentivize private enforcement of civil-rights laws, this legislation represents a key exception to the American Rule.

5

*See, e.g.*, *City of Riverside v. Rivera*, 477 U.S. 561, 576, 106 S. Ct. 2686, 2695 (1986). "Congress enacted § 1988 specifically because it found that the private market for legal services failed to provide many victims of civil rights violations with effective access to the judicial process." *Id.* "Because civil rights litigants are often poor, and judicial remedies are often non-monetary, the Act shifts the costs of litigation from civil rights victim to civil rights violator." *Dowdell v. City of Apopka, Florida*, 698 F.2d 1181, 1189 (11th Cir. 1983). This cost-shifting incentive is highly relevant here, where lengthy and costly litigation—resulting in injunctive relief only—would otherwise leave Plaintiffs' attorneys without proper compensation and discourage attorneys from taking such legitimate cases. *See Rivera*, 447 U.S. at 575-76, 106 S. Ct. at 2695.

## A.    Plaintiffs Were a Prevailing Party

To recover attorneys' fees under 42 U.S.C. § 1988, a plaintiff must be a prevailing party. *See Hensley v. Eckerhart*, 461 U.S. 424, 432, 103 S. Ct. 1933, 1935 (1983). A party prevails "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-12, 113 S. Ct. 566, 573 (1992). Usually, an injunction or declaratory judgment meets this standard. *Lefemine v. Wideman*, ___ U.S. ___, 133 S. Ct. 9, 11 (2012).

6

DCH does not dispute that Plaintiffs were a prevailing party. Because Plaintiffs here obtained substantial relief, we agree. The district court enjoined DCH from reducing Plaintiffs' hours of nursing care and from employing criteria other than medical necessity to review requests for care. Because Plaintiffs directly benefited from this suit, the district court properly found that they were a prevailing party, entitled to recover attorneys' fees under 42 U.S.C. § 1988.

**B.    The District Court Did Not Abuse Its Discretion in Awarding $837,847.50 in Attorneys' Fees**

The lodestar—the product of the reasonable hourly rate and the number of hours billed—is the district court's analytical framework for awarding attorneys' fees. *See Hensley*, 461 U.S. at 433, 103 S. Ct. at 1939. That figure is entitled to a "strong presumption" of validity, *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S. Ct. 3088, 3098 (1986), but the district court can nonetheless adjust this figure upwards or downwards to account for, among other things, the plaintiff's success in the suit. *See Hensley*, 461 U.S. at 434, 103 S. Ct. at 1940.

*1.    The District Court Did Not Abuse Its Discretion in Determining Plaintiffs' Counsel's Reasonable Hourly Rates*

DCH first contests the district court's conclusion on the reasonableness of Plaintiffs' attorneys' hourly rates. In support of its position, DCH complains that the court offered "no discussion regarding why Plaintiffs' rates are deemed

7

reasonable . . . ."  We disagree.  Because the district court based its award on a sufficiently detailed expert affidavit, we find that the court did not abuse its discretion in determining Plaintiffs' attorneys' reasonable hourly rates.

We have defined the reasonable hourly rate as "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).  The district court reviews an expert affidavit on the prevailing market rate for "detail[s]. . . on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge."  *Id.*

The expert affidavit that Plaintiffs presented in this case provided robust detail.  Plaintiffs' expert opined that Plaintiffs' attorneys' rates of $400 and $425 per hour were actually at the low end of the range for similar attorneys doing similar work in the Northern District of Georgia.  To support this conclusion, he cited his eight years' experience using national publications to help establish rates for 100 lawyers within his own firm.  Plaintiffs' expert also cited Plaintiffs' attorneys' experience litigating under Medicaid regulations, specifically those regulations related to disabled children.  He testified not just to the effectiveness of the attorneys' work but also to their efficiency, noting that they "staffed the matter very leanly. . . avoiding duplication of effort."  The district court credited this

expert affidavit in its fees order, noting that "Plaintiffs supported their fee applications with affidavits, including an expert affidavit."

DCH did not adequately rebut the reasonable rate presented by Plaintiffs' expert in his affidavit.  Instead, DCH responded by stating only that Plaintiffs' attorneys had, earlier in their careers, claimed lower rates.  This response ignores our governing precedent, which—as the district court explained—allows attorneys to be paid their current hourly rate to compensate for their delay in payment.  *See Norman*, 836 F.2d at 1306 (noting that attorneys' current rates "ought to be given every consideration" because of the delay in receiving payment).

The district court did not abuse its discretion by crediting Plaintiffs' expert's unrebutted affidavit in setting the reasonable hourly rates.  It also provided a "reasonably specific explanation" in relying on the expert affidavit to enable us to review how the court established the rates awarded.  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 558, 130 S. Ct. 1662, 1676 (2010).

> ### 2.    *The District Court Did Not Abuse Its Discretion in Determining the Number of Hours Plaintiffs' Counsel Reasonably Expended in This Litigation*

DCH next argues that Plaintiffs' attorneys are not entitled to the full number of hours awarded because they did not obtain excellent results and because they lengthened the suit through obstructionist discovery tactics and an unsuccessful motion for class certification.  Because the district court enumerated Plaintiffs'

9

excellent results, because Plaintiffs reduced their hours in response to DCH's objections, and because the district court accounted for the early dismissal of some of Plaintiffs' claims, we find that the district court did not abuse its discretion in determining the number of hours reasonably spent on this challenging and time-consuming litigation.

After determining the hourly rate, the district court ascertains "the number of hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 433, 103 S. Ct. at 1939. That determination, rather than being subject to "a precise rule or formula," is context-dependent. *Id.* at 436, 103 S. Ct. at 1941. Civil-rights litigation in particular presents special circumstances because the district court must account not just for the relief obtained on behalf of the individual litigants but also for the relief obtained on behalf of the public at large. *See Villano v. City of Boynton Beach*, 254 F.3d 1302, 1307 (11th Cir. 2001). "[V]indicating a constitutional right against a [public] defendant heightens the public benefit created by a lawsuit." *Id.*

Also, because civil-rights suits sometimes involve common facts and related legal theories, the district court should not reduce a plaintiff's attorney's hours merely because the plaintiff won under some theories and not others. *See id.* at 1307. Simply put, "[w]hether hours were reasonably expended on litigation is a different question than whether hours were necessary to the litigation, the latter

10

standard being the more exacting of the two." *Id.* at 1308. Instead, the district court should focus on the thrust of the "overall relief" obtained by the plaintiff. *Hensley*, 461 U.S. at 435, 103 S. Ct. at 1940. But even in cases where a reduction in the number of hours is appropriate, the district court has the discretion to simply make an across-the-board cut. *See Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994) ("When faced with a massive fee application . . . an hour-by-hour review is both impractical and a waste of judicial resources.").

DCH complains that the district court reduced the number of hours Plaintiffs' attorneys claimed by only ten percent, when, in DCH's view, Plaintiffs failed on nine of eleven claims. DCH asks us to recalculate Plaintiffs' hours or, alternatively, to remand the case to the district court with clear instructions for recalculation. We decline to do so because we find no abuse of discretion.

First, Plaintiffs themselves voluntarily reduced the number of hours for which they sought compensation from 2,391.65 to 2,241.125. That reduction cut time expended on claims regarding transportation and notice, which were claims unrelated to the substantive relief that Plaintiffs eventually obtained; time expended on claims regarding a party that was ultimately dismissed; and time expended responding to DCH's motions to compel discovery. Nor—as DCH overlooks in its briefing—did Plaintiffs bill for any time spent on class certification**.**

11

Second, as we have explained, the number of claims dismissed at summary judgment is not determinative of the proper award of attorneys' fees. *See Hensley* at 435, 103 S. Ct. at 1940 (discouraging any view that treats complex litigation as "a series of discrete claims"). Instead, "the most critical factor is the degree of success obtained." *Id.* at 436, 103 S. Ct. at 1941. The district court addressed Plaintiffs' success when it concluded that Plaintiffs obtained "all of the main relief that they sought." To support its conclusion, the court cited its three temporary restraining orders, two preliminary injunctions, three permanent injunctions, and declaratory judgment—all issued in Plaintiffs' favor.

The district court also emphasized that Plaintiffs "obtained substantial amounts of nursing care . . . and enjoined . . . [DCH] from enforcing a policy to limit medically necessary skilled nursing services using criteria not based on medical necessity." Significantly, the court relied on the public benefit that Plaintiffs' success bestowed: As a result of the litigation, children statewide benefited from the state's change in policy under GAPP. *See, e.g.*, *City of Riverside v. Rivera*, 477 U.S. 561, 574, 106 S. Ct. 2686, 2694 (1986) (noting that "a successful civil rights plaintiff often secures important social benefits . . . .").

Despite Plaintiffs' success, the district court itself accounted for DCH's defeat of certain claims by reducing the number of hours by ten percent for two

claims dismissed early in the suit.  On this record, we find no abuse of discretion in the awarding of $837,847.50 to Plaintiffs' attorneys.

DCH argues in the alternative that, even if Plaintiffs did obtain substantial relief, they should not be permitted to profit from successes derived from the district court's earlier, incorrect interpretation of the Medicaid Act.  That is, DCH argues that Plaintiffs should not receive fees for any work resulting from the district court's earlier orders that interpreted the Medicaid Act in a way inconsistent with this Court's later decision in *Moore*.

In 2010, at both parties' request, the district court stayed discovery pending the outcome of this Court's decision in *Moore v. Reese*, 637 F.3d 1220 (11th Cir. 2011), which ruled on the scope of DCH's ability to review claims under the Medicaid Act.  As *Moore* later revealed, the district court incorrectly interpreted the Medicaid Act to mean that the state's sole role under GAPP was to screen providers' requests for fraud or abuse.  *See Moore*, 637 F.3d at 1259-60.

But DCH cites nothing in the record to suggest that the district court would have otherwise reached a different outcome in the challenged orders.  To the contrary, though the district judge may have incorrectly stated the law, the court's real concern was that DCH made decisions by ignoring physicians' advice entirely and by advancing a policy agenda unrelated to medical necessity—the very same issues on which Plaintiffs ultimately secured relief.  Under these circumstances, we

13

find no reason why our decision in *Moore* affects the district court's award of attorneys' fees in this case.

## IV.  CONCLUSION

This litigation has now stretched on for a period of almost eight years.  The district court, which has the "superior understanding of the litigation," *Hensley*, 461 U.S. at 437, 103 S. Ct. at 1941, because it presided over it, did not abuse its discretion in awarding Plaintiffs $837,847.50 in attorneys' fees under 42 U.S.C. § 1988.  We therefore affirm the district court's order.

**AFFIRMED.**