**Pearlie M. CHILDREY; Gwendolyn Patton, Plaintiffs–Appellants,**

**v.**

**Jim BENNETT, in his Official Capacity as Secretary of State for the State of Alabama, Defendant–Appellee.**

No. 92–6895.

United States Court of Appeals, Eleventh Circuit.

Aug. 5, 1993.

Lewis Pitts, Durham, NC, for plaintiffs-appellants.

James H. Evans, Jeffrey Harris Long, Attys. Gen., Montgomery, AL, for defendant-appellee.

Before BIRCH, Circuit Judge, CLARK, Senior Circuit Judge, and HOEVELER *, Senior District Judge.

HOEVELER, Senior District Judge:

This appeal involves a factual question: whether the Appellant, Gwendolyn Patton, submitted the minimum number of voter signatures required by Alabama law for her to have been named on the ballot as an independent candidate for the November 1992, election for the United States Senate. Having found no clear error in the district court's conclusion that Patton failed to prove by a preponderance of the evidence that she submitted the required number of signatures to the Secretary of State within the deadline established by Alabama law, we AFFIRM the decision of the district court.

## I. BACKGROUND

On July 22, 1992, Gwendolyn Patton, a black woman, filed an action in the United States District Court for the Middle District of Alabama challenging the constitutionality of an Alabama election law which required independent candidates to amass signatures from one per cent of the voters who cast votes in the last gubernatorial election. *Case No. 92 V–885–N.* Patton sought to have her

---

* Honorable William M. Hoeveler, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

name placed on the ballot as an independent candidate in the November 1992, election for the United States Senate. Under the law that she sought to overturn, Section 17–7–1(a)(3) of the Code of Alabama, Patton was required to submit a petition containing approximately 26,000 signatures by the August 31, 1992, filing deadline. The suit was resolved after the State conceded that such disparity of treatment between independent and minor party candidates was unconstitutional; accordingly, on August 31, 1992, the date of the petition filing deadline, the State and Patton entered into a consent decree and order signed by the district court which reduced the number of required signatures to 12,158, the same number required for minor party candidates to appear on the ballot.

Late in the afternoon of August 31, Patton submitted to the Elections Division of the Secretary of State a jumbled box of petition sheets which she felt contained more than 12,158 signatures. The petition sheets were disorganized because she had dropped the box while carrying it to the election office. Steven Prince and Vicki Balough of the Secretary of State's office received the petition, which was then stored in the office of the Elections Division Director, Jerry Henderson.

Prince, Balough, and Henderson each separately counted Patton's petition sheets, with Balough counting twice. The number of signatures counted differed on each of the four counts, but none totaled the required 12,158 signatures. The counts reached were as follows: 11,785 (Prince), 11,792 (Balough), 11,-577 (Balough), and 11,791 (Henderson).[1] Based on the four counts tallied by its officials, the Elections Division informed Patton on September 8, 1992, that her petition did not contain the required number of signatures and that her name would not be on the ballot.

On October 1, 1992, Patton filed the instant lawsuit against the then Secretary of State of Alabama, Billy Joe Camp[2], alleging that the State's failure to place her on the ballot violated the consent decree and order of August 31, 1992, as well as Patton's rights under the First, Fourteenth, and Fifteenth Amendments. Pearlie M. Childrey, a registered voter, joined Patton as a Plaintiff, claiming a violation of rights protected by the Voting Rights Act, 42 U.S.C. § 1973. Plaintiffs' complaint alleged that Patton had filed the requisite number of signatures, and it sought an order requiring the Secretary of State to place Patton's name on the November 1992, ballot as an independent candidate.

Upon agreement of the parties, on October 8, 1992, the district court held an expedited non-jury trial of the case. United States District Court Judge Robert E. Varner presided over the trial and ruled from the bench, finding that Plaintiffs had failed to carry their burden of proof by a preponderance of the evidence that Patton had submitted the required 12,158 signatures. A written opinion followed on October 9, 1992, at which time judgment was entered for the State.

In explaining the basis for its ruling, the district court relied principally on the four counts of Patton's petition which were made by State officials. The district court further ruled that Plaintiffs had failed to substantiate the additional allegations they had made regarding the adequacy of the security procedures employed by the Elections Division to prevent unauthorized persons from tampering with candidates' petitions. Patton claimed that numerous pages of her petition had disappeared from the Elections Division office prior to the State counts, but the district court found that "there was no direct evidence of such tampering ..." *Order of October 9, 1992*, at page 4. Rather, the district court concluded that it was Patton's disorganization, and the attendant confusion caused by her rush to submit the required number of signatures by the filing deadline, which led to her mistaken belief that her

---

1. Balough would later testify in the trial of this action that she counted more carefully on her second lower count, in an effort to determine if Patton had submitted enough signatures. We also note that Prince actually had signed Patton's petition and stated that he thought her candidacy would add to the political debate and make the election more interesting.

2. Alabama's current Secretary of State, Jim Bennett, has been substituted as the Defendant–Appellee.

petition contained the requisite number of signatures:

> Ms. Patton counted once, but she counted at a time when there was mass confusion about her. She admitted that she was looking for only 12,000 signatures when 12,158 were required and that she continued to attempt to file after ... [the deadline passed]. It is easy to see how Ms. Patton might have been confused in the matter as compared to the people who made the four State counts in an unhurried manner. This Court is of the opinion that Plaintiff did count a number of signatures very carefully before the mass confusion which occurred on the afternoon of August 31, 1992. However, Ms. Patton admitted that her supporters were trying valiantly to raise 12,000 signatures on that afternoon and that she did not actually know that 12,158 were required by this Court's Order at that time.

*Id.* at 7–8. The State therefore was found to have complied with the consent decree and order and to have committed no constitutional violation in denying Patton a place on the November 1992, election ballot.

## II. DISCUSSION

Federal Rule of Civil Procedure 52(a) provides that a district court's findings of fact in actions tried without a jury may not be reversed unless clearly erroneous.[3] Under the law of this Circuit, "[a] finding is clearly erroneous and reversible under Rule 52(a) only when 'the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed.' " *Lincoln v. Bd. of Regents,* 697 F.2d 928, 939–940 (11th Cir.1983), *cert. den.,* 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 102 (1983), quoting *Williamson v. Brown,* 646 F.2d 196, 200 (5th Cir.1981), quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). "If the district court's findings of fact are 'plausible in light of the record viewed in its entirety,' the court of appeals must accept them even if it is 'convinced that had it been sitting as the

trier of fact, it would have weighed the evidence differently.' " *United States v. Fidelity Capital Corp.,* 920 F.2d 827, 836 n. 36 (11th Cir.1991), quoting *Anderson v. Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

Plaintiffs argue that reversal is warranted because the district court committed two clear errors in reaching its factual findings. First, the trial judge is said to have improperly discounted Patton's testimony as to the number of signatures she submitted and to have given undue credit to the testimony of officials from the Elections Division. Second, Plaintiffs claim that the district court failed to give proper weight to evidence suggesting that the Elections Division failed to maintain proper security measures to deny unauthorized persons access to petitions. Patton claims that numerous pages of her petition were surreptitiously removed from the Election Division offices prior to the time that the State counted the petition and that these additional signatures would have brought the State's counts over the required 12,158 signatures. Though these two allegations are intertwined, as both directly concern the district court's ultimate finding in favor of the State, we address each allegation separately for the sake of clarity.

*a. The evidence regarding the number of signatures submitted by Patton*

■ At trial, Patton testified that prior to filing her petition, she had counted out stacks of petitions and numbered them from one to 1,001. Each petition is alleged to have contained at least 11 names, for an alleged minimum total of 11,011 signatures. In addition, Patton stated that a close friend of hers, Tom Hughes, had counted another 1,876 loose signatures, bringing her alleged total to 12,887 signatures before she departed for the Secretary of State's office on the afternoon of August 31. She claimed that she then picked up more uncounted signatures from her supporters outside of the Secretary of State's office just before filing the petition. Unfortunately, Ms. Patton failed to photocopy her

---

**3.** Rule 52(a) states in pertinent part: "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

petition sheets before submitting them to the Elections Office. As previously noted, she also submitted the petition sheets in a jumbled fashion. Steven Prince, the Elections official who had added his signature to Patton's petition[4], testified that the petition was in complete disorder and contained no continuous pagination when Patton filed it at the Elections Office.

Nevertheless, Plaintiffs ask that we accept as controlling—without further proof, and in the face of the four low counts made by State election officials—Patton's trial testimony that her petition exceeded by more than seven hundred signatures the 12,158 cutoff figure. Though the trial judge found that Patton's testimony was credible, he also determined that the officials who counted Patton's petition were "seeking in every way to be honest, and it appeared that most State officials were trying to help Plaintiff Patton make her required number of signatures." *Order of October 9, 1992,* at page 7. Upon this record, we find that the district court was not clearly erroneous in concluding that Patton's testimony was refuted by the greater weight of the evidence represented by the four State counts and the testimony of State officials as to the manner in which the counts were made. *Lincoln v. Bd. of Regents,* 697 F.2d at 939–940.

■ At the close of the trial, the judge, in partial explanation of his ruling, stated that he had discounted Patton's testimony somewhat because he found her to be the only witness who had a direct interest in the outcome of the case. Plaintiffs argue that this discounting was "an abuse of discretion" and that the trial judge improperly failed to recognize the State's "institutional bias"

against an independent black female candidate. We find nothing in the record to substantiate the latter claim. Regarding the judge's decision to discount Patton's testimony, we conclude there was no abuse of discretion, as it is the exclusive province of the judge in non-jury trials to assess the credibility of witnesses and to assign weight to their testimony.[5]

b. *The allegation that sheets were taken from Patton's petition after it was submitted to the Elections Division office*

■ After being notified on September 8 that her name would not be on the ballot, Ms. Patton went to the Elections Division office and examined the photocopies of the petition which officials had made.[6] She claimed to have discovered many pages missing from the petition that she submitted on August 31. Patton then asked an accountant whom she knew to examine the copied petition sheets. The accountant allegedly determined that as many as 156 pages were missing, leading Plaintiffs to charge that the petition had been tampered with while stored in the office of Jerry Henderson, the Director of the Elections Division.

At the trial, however, Patton could not substantiate this charge; nor could she provide the district court with copies of the alleged missing pages, as she had failed to photocopy the petition before filing it. The district court

> noted that possibly insufficient security was offered by Defendant in assuring that no unauthorized person could tamper with the petitions after the filing thereof. However, there was no direct evidence of such tampering, and each of the State counts submitted by State officials totaled signifi-

---

4. See note 1, *supra.*

5. In *Anderson v. Bessemer City,* the Supreme Court wrote that "when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." 470 U.S. at 575, 105 S.Ct. at 1512. Recognizing that no such contradictory external evidence was admitted at trial, and that the district court's ruling contained no internal contradictions germane to its conclusion that

Patton did not file the minimum number of signatures, we find no grounds for departure from the strong rule of deference enunciated in *Anderson.*

6. Officials denied Patton access to the petition until they had completed photocopying the petition sheets. Plaintiffs infer that this delay constituted indirect proof of irregularities in the State's handling of her petition. We find, however, that the State merely acted with necessary caution in copying the petition prior to allowing a prospective candidate access to it.

cantly less than the required 12,158 signatures.

*Order of October 9, 1992,* at pages 3–4. We find no clear error in this conclusion. Absent direct evidence that someone either stole or lost pages from Patton's petition after she submitted it to the Elections Office, Plaintiffs cannot establish that foul play or negligence invalidated the State's counting of her petition. While we recognize that Plaintiffs were perhaps fatally handicapped by Patton's failure to make copies of her submission before providing the lists to the Elections Division, only Patton bears responsibility for this problem. We therefore affirm the district court's finding that Plaintiffs had failed to carry their burden of proof with respect to the allegations that Patton's petition had been tampered with at the Elections Division.

## III. CONCLUSION

The judgment for the Defendant entered by the trial court is not clearly erroneous on the basis of the evidence before that court. Accordingly, the judgment of the district court is in all respects AFFIRMED.