[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————

No. 05-11663

————————

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 8, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 02-20678-CV-AMS

DAVID M. BILLINGS,

Plaintiff-Appellee,

versus

UNUM LIFE INSURANCE COMPANY OF AMERICA,
a foreign corporation and subsidiary of Unumprovident
Corporation,

Defendant-Appellant.

————————

Appeal from the United States District Court
for the Southern District of Florida

————————

**(August 8, 2006)**

Before DUBINA and KRAVITCH, Circuit Judges, and MILLS,* District Judge.

_____
*Honorable Richard Mills, United States District Judge, for the Central District of Illinois, sitting
by designation.

DUBINA, Circuit Judge:

Appellant, UNUM Life Insurance Company ("UNUM"), appeals the district court's order granting summary judgment in favor of appellee, David Billings ("Billings"), as to his claim under the Employment Retirement Income and Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, for wrongful denial of disability benefits due to Obsessive Compulsive Disorder ("OCD"). UNUM contends that the district court erred in finding that its policy's mental illness limitation, limiting benefits to twenty-two months due to mental disorders, is ambiguous, and thus erred in holding that the limitation does not apply to limit Billings's benefits due to OCD. In this appeal, we are presented with an issue of first impression in this circuit, whether a "mental illness" limitation of an ERISA-governed contract, which fails to provide whether an illness is categorized as mental based on its symptoms or etiology, is ambiguous. We hold that it is and affirm the district court's order granting summary judgment.

Additionally, UNUM appeals the district court's final judgment awarding Billings benefits for his claim under ERISA for wrongful denial of disability benefits due to Meniere's Disease. UNUM challenges the district court's findings of fact and conclusions of law that Billings is "disabled" under the terms of the policy due to Meniere's Disease. Alternatively, UNUM challenges the district

2

court's award of disability benefits for the time period between the last day of trial and the day the district court entered judgment twenty-two months later.

## I.  FACTS

Billings was a pediatrician employed at Pediatric Professional Associates, P.A. and was covered under a group long term disability policy ("policy") issued by UNUM when he was diagnosed in November 1996 as suffering from OCD and Major Depression.  Billings was advised by his treating physician that due to OCD, he could not practice pediatrics.  On January 21, 1997, Billings stopped working as a pediatrician and has not practiced medicine since.  Billings filed a claim with UNUM on or about June 3, 1997, for disability benefits under the policy due to OCD and Major Depression.  UNUM approved his claim and began paying disability benefits effective July 21, 1997.

UNUM's policy provides that it will pay the insured monthly benefits upon proof that the insured "is disabled due to sickness or injury." (R. Vol. 1, Tab. 27, Second Am. Compl., Ex. A, Policy at L-BEN-1.)  The policy further provides that "'[d]isability' and 'disabled' mean that because of injury or sickness the insured cannot perform each of the material duties of his regular occupation.  Note: For physicians, 'regular occupation' means the speciality in the practice of medicine which the insured was practicing just prior to the date disability started."  (Policy

3

at L-DEF-4.)  "Sickness" is further defined as "illness or disease."  (Policy at L-DEF-3.)  However, the policy contains the following limitation for "mental illness:" "[b]enefits for disability due to mental illness will not exceed twenty-four months of monthly benefit payments."  (Policy at L-BEN-5.)  The policy goes on to define "mental illness" as "mental, nervous or emotional diseases or disorders of any type."  (Policy at L-BEN-6.)

In February 1999, UNUM informed Billings that, pursuant to the policy's mental illness limitation, his benefits based on OCD and Major Depression would terminate on July 20, 1999.  Billings then filed a disability claim based on Meniere's Disease.[1]  UNUM initially approved Billings's continuation of disability benefits due to Meniere's Disease.  However, after further investigation UNUM determined that Billings did not meet the policy's definition of "disabled" because the severity of the Meniere's Disease did not render Billings incapable of performing the material duties of a pediatrician.  Accordingly, UNUM terminated Billings's benefits effective August 13, 2001.

Billings filed a complaint against UNUM under ERISA alleging wrongful denial of benefits and sought back benefits from August 2001.  In Count I of the

---

[1]Billings presented expert testimony that Meniere's Disease is a disease of the inner ear which is characterized by episodic vertigo, progressive hearing loss, tinnitus (ear-ringing or whistling), and a sense of aural "fullness" or pressure.  (R. Vol. 10 at 45-47.)

complaint,[2] he alleged that UNUM wrongfully denied him benefits due to OCD,[3] and in Count II he alleged that UNUM wrongfully denied him benefits due to Meniere's Disease. Both parties filed cross-motions for summary judgment as to Count I. The undisputed facts established that OCD is a physiological condition, that is, it has a physical or organic cause, with symptoms that are mental in nature. Billings argued that: (1) the mental illness limitation is ambiguous because it does not provide whether an illness is classified as mental based on its symptoms or its origin, and thus has to be construed against the insurer; and (2) when construed against the insurer, the limitation does not apply to organically based illnesses such as OCD. UNUM contended that the mental illness limitation applies to all disorders or diseases which are characterized by mental symptoms, regardless of cause, because to do otherwise would render the limitation meaningless.

The district court held that the policy's mental illness limitation is ambiguous and must be construed against UNUM under the applicable Florida state law doctrine of *contra proferentem*. When construed against UNUM, the district court held that the limitation does not apply to an illness with an organic or

---

[2]"Complaint" in this opinion refers to Billings's Second Amended Complaint.

[3]Billings also sought wrongful denial of benefits due to Major Depression in Count I. However, it is undisputed that Billings later abandoned this claim and that it is not at issue in this appeal.

physical cause. Accordingly, the district court granted Billings summary judgment

as to Count I. After a six-day bench trial, the district court entered final judgment

in favor of Billings as to Count II. At trial, it was undisputed that Billings suffered

from Meniere's Disease; however, the dispute centered on the severity of

Billings's disease. Based on Billings's testimony, documentation of his episodes,[4]

and the testimony of his family members and his treating physician, the district

court found that Billings was disabled due to Meniere's Disease under the terms of

the policy.

In UNUM's opposition to Billings's proposed final judgment, it requested

the district court remand Billings's claim for back benefits due to Meniere's

Disease to UNUM, rather than award back benefits up to the day judgment was

entered. In doing so, UNUM argued it could determine in the first instance

whether Billings continued to be entitled to benefits. The district court entered

final judgment twenty-two months after the last day of trial and awarded Billings

back benefits due to Meniere's Disease up to the day it entered judgment. UNUM

timely appeals.

## II. ISSUES

---

[4]An "episode" is a period in which Billings experiences vertigo as a result of Meniere's
Disease.

1.  Whether the policy's mental illness limitation is ambiguous, and thus must be construed against UNUM such that organically based illnesses do not fall within the limitation.

2.  Whether the district court erred in awarding Billings disability benefits based on clearly erroneous findings of fact that he was disabled due to Meniere's Disease under the terms of the policy.

3.  Alternatively, whether the district court erred in awarding benefits up to the day it entered judgment, rather than remanding to UNUM as the plan administrator to determine whether Billings's disability continued up to the day judgment was entered twenty-two months after trial.

## III.  STANDARDS OF REVIEW

"We review a district court's grant of summary judgment *de novo*, applying the same legal standards that controlled the district court's decision." *Levinson v. Reliance Standard Life Ins. Co.*, 245 F.3d 1321, 1325 (11th Cir. 2001).  A denial of ERISA benefits is reviewed *de novo* where, as here, the plan administrator is accorded no discretion.  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  We review findings of fact under a clearly erroneous standard.  Fed. R. Civ. P. 52(a).  Whether the district court erred in awarding back benefits rather

7

than remanding the case to UNUM is a question of law reviewed *de novo*.

*Levinson*, 245 F.3d at 1325.

## IV. DISCUSSION

At the outset, we address whether we must reach the merits of all the issues before this court on appeal. Billings contends that we need not reach the merits of whether his disability benefits due to OCD are limited to twenty-four months under the mental illness limitation if we affirm his entitlement to disability benefits due to Meniere's Disease. UNUM, on the other hand, asserts that we must reach the merits of the mental illness limitation issue because the district court's order granting summary judgment to Billings as to Count I represents an ongoing legal impediment to UNUM.[5] For example, UNUM argues that if Billings's Meniere's Disease ceases, under the district court's order it will be required to continue to provide disability benefits to Billings due to OCD. We conclude that because the district court's order continues to affect the rights of UNUM, and UNUM continues to have a cognizable interest in the outcome, we

---

[5]At oral argument, UNUM asserted for the first time that this court should vacate the district court's order granting summary judgment if we affirm Billings's award of disability benefits due to Meniere's Disease. UNUM provided the court with supplemental authority supporting its contention that we should vacate the district court's order. However, we will not consider new issues raised outside the parties' opening briefs. *See Randolph v. Green Tree Fin. Corp.*, 244 F.3d 814, 816 (11th Cir. 2001). Accordingly, we deem the issue abandoned. Furthermore, even if we were to address UNUM's argument, we would not vacate the district court's order for the reasons discussed above.

must address the mental illness limitation issue. *See Iron Workers Local #272 v. Bowen*, 624 F.2d 1255, 1262 (5th Cir. 1980).[6]

*A. Mental Illness Limitation*

UNUM argues that the policy's mental illness limitation, defining a "mental illness" as "mental, nervous or emotional diseases or disorders of any type," is not ambiguous because it is not susceptible to more than one reasonable interpretation. Specifically, UNUM contends that the district court's interpretation is unreasonable because it writes the provision out of the policy by preventing it from applying to OCD, a mental disorder, regardless of its cause. UNUM further contends that the district court's interpretation is unreasonable in light of ERISA's tenets for contract interpretation, which require that words be given their plain meaning. UNUM argues that if the plain meaning is applied to the term "mental illness" in the policy, it unambiguously encompasses all illnesses that manifest through mental symptoms, regardless of the ultimate cause of the illness.

UNUM's argument is based on the opinions of the Eighth and Fifth Circuits, which hold that applying the plain meaning to a mental illness limitation resolves any ambiguity regarding the classification of an illness as "mental" under

[6]This court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

the policy. *See Brewer v. Lincoln Nat'l Life Ins. Co.*, 921 F.2d 150, 153-54 (8th Cir. 1990) (applying the plain and ordinary meaning as understood by a layperson to the limitation, and thus holding the policy classified illnesses as mental based on their symptoms because "[t]he cause of a disease is a judgment for experts"); *Delk v. Durham Life Ins. Co.*, 959 F.2d 104, 105 (8th Cir. 1992) (clarifying that the court in *Brewer* held that the limitation "ceased to be ambiguous when it was accorded its ordinary, and not specialized, meaning"); *Lynd v. Reliance Standard Life Ins. Co.*, 94 F.3d 979, 983-84 (5th Cir. 1996) (adopting the Eighth Circuit's reasoning in *Brewer*). Reasoning that "laymen know and understand symptoms," these circuits have held that applying the plain meaning to a mental illness limitation eliminates any ambiguity by focusing on the symptoms of the illness to determine whether it falls within the mental illness limitation. *Brewer*, 921 F.2d at 154; *Lynd*, 94 F.3d at 983.

Billings, on the other hand, argues that the mental illness limitation is ambiguous because the policy is silent as to whether an illness is classified as "mental" under the policy based on its origin or symptoms. Billings argues that a reasonable interpretation of the policy is that an illness is classified as "mental" based on its origin rather than its symptoms. Because the policy does not provide how it classifies an illness as "mental," Billings asserts that each party presented

10

reasonable interpretations of the limitation, and thus the policy is ambiguous. Applying the state doctrine of *contra proferentem*, and thereby construing the limitation against UNUM, Billings contends that OCD does not fall within the limitation because it is undisputedly an organically, or physically, based illness.

Billings's argument is consistent with the Seventh and Ninth Circuits' reasoning that a mental illness limitation that fails to "contain any language suggesting whether the cause or the manifestation [of an illness] determines whether an illness is covered" is ambiguous. *Phillips v. Lincoln Nat'l Life Ins. Co.*, 978 F.2d 302, 311 (7th Cir. 1992); *Patterson v. Hughes Aircraft Co.*, 11 F.3d 948, 950 (9th Cir. 1993). Construing the ambiguity against the drafter under the applicable state law doctrine of *contra proferentem*, these circuits have held that the limitation does not include organically based illnesses. *Phillips*, 978 F.2d at 311; *Patterson*, 11 F.3d at 950.

This court has held that "[a]n insurance contract is ambiguous if it is susceptible to two or more reasonable interpretations that can fairly be made. When one of these interpretations results in coverage and another results in exclusion, ambiguity exists in the insurance policy." *Dahl-Eimers v. Mut. of Omaha Life Ins. Co.*, 986 F.2d 1379, 1381 (11th Cir. 1993) (citations omitted). The district court reasoned that because mental illnesses are categorized according

11

to either their origins or symptoms, each party presented reasonable interpretations of the mental illness limitation where the policy was silent as to the proper classification. Accordingly, the district court held that the limitation is ambiguous, and applying the applicable state law doctrine of *contra proferentem* by construing the limitation against the drafter, it held that organically based illnesses do not fall within the limitation.

As set out above, our sister circuits have reached differing conclusions regarding the ambiguity of a mental illness limitation that fails to provide whether an illness is classified as mental based on its origin or symptoms. *Compare Patterson v. Hughes Aircraft Co.*, 11 F.3d 948, 950 (9th Cir. 1993) (holding that a mental illness limitation containing the exact language at issue in this case is ambiguous because it does not "specify whether a disability is to be classified as 'mental' by looking to the cause of the disability or to its symptoms," and thus construed in favor of the insured, does not encompass organically based illnesses), *and Phillips v. Lincoln Nat'l Life Ins. Co.*, 978 F.2d 302, 304, 310-11 (7th Cir. 1992) (holding that a mental illness limitation limiting the maximum payment for "care of mental illness or care of nervous conditions of any type or cause" is ambiguous because the plan contains "no definition or explanation of the term 'mental illness,'" and thus, construed against the insurance company does not

12

include physically based illnesses), *with Brewer v. Lincoln Nat'l Life Ins. Co.*, 921 F.2d 150, 153-54 (8th Cir. 1990) (applying the plain and ordinary meaning to resolve the ambiguity), *and Delk v. Durham Life Ins. Co.*, 959 F.2d 104, 105 (8th Cir. 1992) (acknowledging that the court in *Brewer* resolved the ambiguity by applying the plain meaning), *and Lynd v. Reliance Standard Life Ins. Co.*, 94 F.3d 979, 983-84 (5th Cir. 1996) (adopting the Eighth Circuit's reasoning in *Brewer*).[7] We, however, agree with the reasoning of the Seventh and Ninth Circuits. We therefore hold that because "[t]he policy contains no definition or explanation of the term 'mental [disorder],' and offers no illustration of the conditions that are included or excluded," and fails to "contain any language suggesting whether the cause or the manifestation determines whether an illness" falls within the limitation, it is ambiguous as applied to Billings. *Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 541 (9th Cir. 1990); *see Phillips*, 978 F.2d at 310-11.

---

[7]In its order, the district court described the circuit split as pertaining to whether a mental illness limitation is ambiguous, citing the Eighth and Fifth Circuits as holding that a mental illness limitation is unambiguous. We do not read the Eighth and Fifth Circuits' opinions as holding that a mental illness limitation is unambiguous. Rather, we conclude from those opinions, and a subsequent opinion, that the circuits found it ambiguous, but applied the plain meaning to resolve the ambiguity. *See Delk v. Durham Life Ins. Co.*, 959 F.2d 104, 105 (8th Cir. 1992) (explaining that in *Brewer* it was able to "resolve the ambiguity in the language by interpreting the language as would 'an average plan participant'" and holding that the policy "ceased to be ambiguous when it was accorded its ordinary, and not specialized meaning").

Furthermore, we are not persuaded by the Eighth and Fifth Circuits' reasoning that the ambiguity can be resolved by applying the plain meaning. *See Brewer*, 921 F.2d at 154; *Delk*, 959 F.2d at 105-06; *Lynd*, 94 F.3d at 983-84. Applying the plain meaning to the limitation does not resolve the ambiguity; doing so merely adopts one reasonable interpretation over the other. It is well-established in this circuit, and among our sister circuits, that once we conclude an ERISA-governed plan is ambiguous, we apply the doctrine of *contra proferentem* to resolve the ambiguities in the insurance contract. *E.g., Lee v. Blue Cross/Blue Shield of Ala.*, 10 F.3d 1547, 1551 (11th Cir. 1994). "Application of this rule requires us to construe ambiguities against the drafter . . . ." *Id.* In doing so, we must conclude that Billings's organically based OCD does not fall within the policy's mental illness limitation. *See Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 943 (9th Cir. 1995) (explaining that "[b]ecause of the rule that ambiguities are to be resolved in favor of the insured, if either a cause or a symptom of the disease were physical and caused the disability in whole or in part, then" the disease does not fall within the mental illness limitation); *Phillips*, 978 F.2d at 310-11, 314 (holding that upon applying the doctrine of *contra proferentem*, the insured's organically based illness does not fall within the mental illness limitation as a matter of law).

14

Accordingly, we affirm the district court's order granting summary judgment as to Count I.

*B. Disability Award*

UNUM contends that the district court erred in awarding Billings disability benefits due to Meniere's Disease because its findings of fact regarding the severity and predictability of Billings's episodes are clearly erroneous. Specifically, UNUM argues that the district court's findings of fact are clearly erroneous because it ignored inconsistent and contradictory evidence regarding the effects of Billings's disease. UNUM asserts that the presumption afforded to the district court that it is in the superior position to make credibility determinations is undermined in this case by the twenty-two month delay between the last day of trial and the district court's entry of findings of fact and conclusions of law. Alternatively, UNUM challenges the sufficiency of the evidence supporting the award of benefits through the last day of trial up to the day the district court entered judgment twenty-two months later. We are not persuaded by UNUM's arguments.

Based on the district court's credibility determinations of Billings's testimony, it found that Billings was unable to perform the material duties of his job as a result of Meniere's Disease, and thus was disabled under the terms of the

15

policy. The district court stated that its credibility determination was based on its observations of Billings during his testimony, the corroboration of his testimony by his treating physician and family members, and evidence which included contemporaneous notes regarding his illness that he documented in his calendars.

It is well-established that,

> [a] finding [of fact] is clearly erroneous and reversible under Rule 52(a) only when the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. If the district court's findings of fact are plausible in light of the record viewed in its entirety, the court of appeals must accept them even if it is convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.

*Childrey v.Bennett*, 997 F.2d 830, 833 (11th Cir. 1993) (citations and internal quotation marks omitted). Upon careful review of the record as a whole, we are not "left with a definite and firm conviction that a mistake has been committed." *Id.* We will not re-weigh the evidence as UNUM essentially requests. Moreover, the twenty-two month delay alone does not undercut the presumption that the district court is in the best position to make credibility determinations. Accordingly, we conclude that the district court's findings of fact are not clearly erroneous.

Furthermore, we are not persuaded by UNUM's alternative argument that the award of disability benefits through the last day of trial up to the day the

16

district court entered judgment twenty-two months later was not supported by sufficient evidence. UNUM contends that the district court's award of benefits was not supported by record evidence because there was no evidence before the court that Billings continued to suffer from Meniere's Disease after the last day of trial. Additionally, UNUM argues that the district court should have remanded the case to UNUM as the plan administrator to determine in the first instance whether Billings continued to suffer a disability past the last day of trial.

UNUM relies on this court's statement that, "as a general rule, remand to the plan fiduciary is the appropriate remedy when the plan administrator has not had an opportunity to consider evidence on an issue." *Levinson*, 245 F.3d at 1330 (citing *Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1140 (11th Cir. 1989)). However, in *Levinson* we explained that the above statement was "made in the context of the beneficiary asking the court to consider additional evidence concerning his eligibility under the plan." *Id.* at 1329. Accordingly, in *Levinson* we held that because "all of the evidence before the district court showed that [the insured]'s condition had not improved and tended to show that he was still disabled under the terms of the plan, remand was neither a necessary nor an appropriate remedy." *Id.* at 1330. Accordingly, we affirmed the district court's award of benefits. *Id.*

17

UNUM contends that *Levinson* is distinguishable from the present case because the record in *Levinson* contained evidence that the insured continued to suffer a disability through the last day of trial, and benefits were awarded only through that date. Although we have not squarely addressed whether the insured is required to continue to present evidence of an on-going disability throughout trial and the entry of judgment in order to ensure an award of disability benefits through such date, the First Circuit has clearly rejected such an argument.

In *Cook v. Liberty Life Assurance Co.*, 320 F.3d 11, 23-25 (1st Cir. 2003), the First Circuit held that an award of back pay disability benefits for the forty-two months between the time the insured's disability benefits were terminated and judgment was entered was appropriate, despite the fact that there was no evidence of the insured's disability status past the day benefits were terminated. The court noted that "the absence of information about [the insured]'s disability status resulted directly from [the insurer]'s arbitrary and capricious termination of [the insured]'s benefits" because the insured was no longer obligated under the policy to provide evidence of a continuing disability after her benefits were terminated. *Id.* at 24. Thus, the court reasoned that "[i]t would be patently unfair to hold that an ERISA plaintiff has a continuing responsibility to update her former insurance company and the court on her disability during the pendency of her internal

18

appeals and litigation, on the off chance that she might prevail in her lawsuit." *Id.* at 24-25. We agree.

After reviewing the record, we conclude that although there was no evidence in the record that Billings continued to suffer a disability during the period between the last day of trial and the day the district court entered judgment, there was also no evidence before the district court indicating that Billings's condition had improved during such time period. Therefore, we affirm the district court's final judgment awarding disability benefits due to Meniere's Disease.

## V. CONCLUSION

For the foregoing reasons, we affirm the district court's order granting summary judgment in favor of Billings and final judgment awarding disability benefits due to Meniere's Disease.

**AFFIRMED.**