WILSON, Circuit Judge,
specially concurring:
I agree with the decision to uphold the fee award in this ease. I do not, however, share my colleague Judge Carnes’ view that the district court’s decision and our own prior precedents in this area are inconsistent with the teachings of the Supreme Court. The Court has not held that quality of representation and exceptional results can never be grounds for an upward adjustment of the lodestar figure. To the contrary, the Court has allowed for the possibility of an enhancement based on these factors where, as here, specific record evidence indicates that the lodestar amount is insufficient to provide a reasonable fee. Accordingly, I concur in the result only.
I.
In Blum v. Stenson, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), the Supreme Court considered whether, and under what circumstances, quality of representation and exceptional results can support an enhancement of the lodestar. The Court noted that the quality of an attorney’s representation “generally is reflected in the reasonable hourly rate.” Id. at 899, 104 S.Ct. at 1549. However, the Court stated that this factor may justify an upward adjustment “in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was ‘exceptional.’ ” Id. (quoting Hensley v. Eckerhart, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983)). Because the attorneys in Blum offered no such evidence, the Court concluded that the district court’s reliance on quality of representation as grounds for an enhancement amounted to double counting. Id. The Court indicated, however, that the outcome would have been different had there been specific evidence showing that an enhancement was neees- *1243 sary to reflect counsel’s superior performance. See id. at 900, 104 S.Ct. at 1549 (“Absent specific evidence to the contrary, we cannot say that [the] rates ... for these three attorneys do not fully reflect the quality of their representation.”).
With respect to the results obtained, the Court said that this factor likewise will “generally ... be subsumed within other factors used to calculate a reasonable fee,” and therefore “it normally should not provide an independent basis for increasing the fee award.” Id. at 900, 104 S.Ct. at 1549-50. The Court did not hold, however, that consideration of the results obtained is categorically impermissible. In fact, the Court took the opposite position, reiterating its prior statement from Hensley: “[WJhere a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhancement award may be justified.” Blum, 465 U.S. at 901, 104 S.Ct. at 1550 (internal quotation marks omitted) (quoting Hensley, 461 U.S. at 435, 103 S.Ct. at 1940). Again, the Court indicated that the determinative consideration is whether the record contains evidence “show[ing] that the benefit achieved requires an upward adjustment to the fee.” Id. at 900, 104 S.Ct. at 1550.
Blum thus establishes that enhancements for quality of representation and exceptional results, while not warranted in most cases, are permissible where supported by specific evidence. Therefore, to accept Judge Carnes’ view that these factors can never be grounds for an enhancement, one would have to conclude that the Supreme Court has repudiated that aspect of Blum. I find little support for that proposition. Judge Carnes’ opinion cites language in Pennsylvania v. Delaware Valley Citizens’ Council for Clean Air (Delaware Valley I), 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986), that, when read in isolation, arguably characterizes Blum as having established a categorical rule against consideration of the quality of representation and the results obtained. See id. at 565, 106 S.Ct. at 3098 (“[W]e specifically held in Blum that ... the ‘quality of representation,’ and the ‘results obtained’ from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award.” (quoting Blum, 465 U.S. at 898-900, 104 S.Ct. at 1548-50)). Judge Carnes’ reliance on this passage is misplaced for a number of reasons. As an initial matter, the statement is internally inconsistent: while providing that the named factors “cannot serve as independent bases for increasing the basic fee award,” it also indicates that the factors are only “presumably” reflected in the lodestar amount. Thus, even standing alone, the statement provides uncertain support for Judge Carnes’ opinion’s conclusion.
More significantly, the statement is not a holding of the Court. It is merely part of a discussion summarizing Blum and citing the case with approval. A review of the discussion as a whole makes clear that the Court was not purporting to alter Blum in any way. Indeed, in the sentence immediately following the language at issue, the Court restated Blum’s holding that upward adjustments are proper “in certain ‘rare’ and ‘exceptional’ cases, supported by both ‘specific evidence’ on the record and detailed findings by the lower courts.” Id. (quoting Blum, 465 U.S. at 898-901, 104 S.Ct. at 1548-50). The Court’s references to “specific evidence” are quoted from the portions of Blum addressing the showing necessary for an enhancement based on quality of represen *1244 tation.[1] Read in this context, the language cited by Judge Carnes’ opinion cannot reasonably be characterized as a departure from Blum. Rather, it must be construed as a reaffirmation of Blum’s, teachings concerning the “quality of representation” and “results obtained” factors: namely, that while these considerations are presumably reflected in the lodestar figure, and cannot serve as grounds for an enhancement where that is the case, the presumption may be rebutted by specific evidence.
The portions of Delaware Valley I setting forth the Court’s holding confirm this interpretation. In concluding that the enhancement awarded by the district court was improper, the Court discussed the “quality of representation” factor in non-categorical terms consistent with Blum: “Because considerations concerning the quality of a prevailing party’s counsel’s representation normally are reflected in the reasonable hourly rate, the overall quality of performance ordinarily should not be used to adjust the lodestar, thus removing any danger of ‘double counting.’ ” Delaware Valley I, 478 U.S. at 566, 106 S.Ct. at 3099 (emphasis added). Moreover, the Court conducted a case-specific analysis, explaining how the record before it failed to support an upward adjustment. See, e.g., id. at 567, 106 S.Ct. at 3099 (noting that nearly one-third of hours reasonably spent on relevant phase of case were not compensated at hourly rate for most difficult work).
It was this lack of evidentiary support— rather than a blanket rule against consideration of the quality of representation or the results obtained — that compelled reversal, as the Court repeatedly made clear. As to the attorneys’ performance, the Court stated: “[V]iewing the evidence submitted by Delaware Valley to support its petition for attorney’s fees, there is no indication as to why the lodestar did not provide a reasonable fee award reflecting the quality of representation .... ” Id. The same conclusion applied to the results obtained: “Delaware Valley presented no specific evidence as to what made the results it obtained ... so ‘outstanding,’ nor did it provide any indication that the lodestar figure for this portion of the case was far below awards made in similar cases where the court found equally superior quality of performance.” Id. at 567-68, 106 S.Ct. at 3099. Finally, the Court deemed it significant that neither of the lower courts “made detailed findings as to why the lodestar amount was unreasonable, and in particular, as to why the quality of representation was not reflected in the product of the reasonable number of hours times the reasonable hourly rate.” Id. at 568,106 S.Ct. at 3099.
The Court left little doubt that these considerations were critical to its disposition of the case. Using language virtually identical to that of Blum, the Court concluded: “In the absence of such evidence and such findings, we find no reason to increase the fee award ... for the quality of representation.” Id. at 568, 106 S.Ct. at 3099-100 (emphasis added). Cf. Blum, 465 U.S. at 900, 104 S.Ct. at 1549 (“Absent specific evidence to the contrary, we cannot say that [the] rates ... for these three attorneys do not fully reflect the quality of their representation.”).
These statements undermine any suggestion that Delaware Valley I precludes *1245 courts from ever considering the quality of representation and the results obtained as grounds for enhancing the lodestar figure. Such an interpretation cannot be squared with the Court’s repeated descriptions of these factors as presumptively, but not absolutely, reflected in the lodestar figure. Moreover, had the Court intended to establish such a rule, its entire discussion concerning the deficiencies in the record and the lack of findings by the lower courts would have been unnecessary.
Judge Carnes’ opinion argues that we may ignore the Court’s statements regarding the record because they are merely alternative holdings. However, that view fails to account for the statement that immediately precedes the Court’s record analysis: “Because considerations concerning the quality of a prevailing party’s counsel’s representation normally are reflected in the reasonable hourly rate, the overall quality of performance ordinarily should not be used to adjust the lodestar .... ” 478 U.S. at 566, 106 S.Ct. at 3099 (emphasis added). At no point did the Court suggest that this unambiguous statement of the governing law (a statement that Judge Carnes’ opinion does not address) was somehow an alternative basis for its decision. Moreover, as discussed, the Court repeatedly made clear that the evi-dentiary deficiencies and lack of findings were essential to the outcome in the case. See, e.g., id. at 567, 106 S.Ct. at 3099 (“In sum, viewing the evidence submitted by Delaware Valley to support its petition for attorney’s fees, there is no indication as to why the lodestar did not provide a reasonable fee award reflecting the quality of representation provided during Phase V of the litigation.”); id. at 568, 106 S.Ct. at 3099-100 (“In the absence of such evidence and such findings, we find no reason to increase the fee award ... for the quality of representation.”). There simply is no basis for concluding, as Judge Carnes’ opinion does, that we are free to disregard virtually all of Part III.B of the Court’s opinion.
Judge Carnes’ opinion also relies on language in which the Court described enhancements for superior performance as “unnecessary” for purposes of enabling plaintiffs to secure legal assistance. See id. at 566, 106 S.Ct. at 3098. In the same discussion, however, the Court reiterated that such enhancements are not categorically barred, despite being disfavored as a general matter. In explaining the reasons for the “strong presumption” that the lodestar figure represents a reasonable fee, see id. at 565, 106 S.Ct. at 3098, the Court noted that an attorney who accepts a case “obligates himself to perform to the best of his ability and to produce the best possible results commensurate with his skill and his client’s interests.” Id. Therefore, the Court said, “[cjalculating the fee award in a manner that accounts for these factors, either in determining the reasonable number of hours expended on the litigation or in setting the reasonable hourly rate, ... adequately compensates the attorney, and leaves very little room for enhancing the award based on his post-engagement performance.” Id. at 565-66, 106 S.Ct. at 3098 (emphasis added). The Court’s subsequent description of performance-based enhancements as “unnecessary” must be read in light of that statement, which makes clear that such adjustments are permissible under narrow circumstances. Given that instruction, as well as the Court’s numerous other statements articulating a non-categorical approach, the language cited by Judge Carnes’ opinion cannot be read to preclude enhancements for performance in all cases.[2]
*1246 Accordingly, I cannot accept the conclusion that our decisions in NAACP v. City of Evergreen, 812 F.2d 1332 (11th Cir.1987), and Norman v. Housing Authority of Montgomery, 836 F.2d 1292 (11th Cir.1988), were wrongly decided. In NAACP, the district court denied a request for an enhancement but failed to make findings with regard to one of the factors relied upon as a justification: “the assertion that the relief obtained was of great benefit to the black citizens of Evergreen and represented exceptional success.” 812 F.2d at 1336. While stressing that the results obtained “normally will be subsumed in the calculation of a reasonable fee,” id. at 1337, we noted that “[t]he award may be enhanced ... ‘in some cases of exceptional success,’ ” id. (quoting Blum, 465 U.S. at 897, 104 S.Ct. at 1548). We therefore remanded for reconsideration in light of those principles. Id. Similarly, in Norman, the district court failed to make a finding as to whether the results obtained were exceptional. 836 F.2d at 1306. In remanding, we were careful to note that even a finding of exceptional results would not support an enhancement unless the court also found that counsel’s representation “was superior to that which would have been expected considering the rates requested.” Id. (citing Blum, 465 U.S. at 899, 104 S.Ct. at 1549). NAACP and Norman thus are fully consistent with the principles set forth in Hensley, Blum, and Delaware Valley I[3]
Other circuits share our understanding of the Court’s teachings. See, e.g., Geier v. Sundquist, 372 F.3d 784, 794-95 (6th Cir.2004) (concluding that Delaware Valley I permits enhancements based on quality of representation and results obtained in rare and exceptional cases); Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1046 (9th Cir.2000) (stating that upward adjustment for quality of representation “is justified only in the rare case where there is specific evidence that the quality of service was superior in light of the hourly rates charged and that the success *1247 was exceptional”); Hyatt v. Apfel, 195 F.3d 188, 192 (4th Cir.1999) (affirming enhancement for results obtained); Forshee v. Waterloo Indus., Inc., 178 F.3d 527, 532 (8th Cir.1999) (stating that, to justify enhancement for outstanding service and results, applicant “must establish that the quality of service rendered and the results obtained were superior to what one reasonably should expect in light of the hourly rates charged and the number of hours expended” (internal quotation marks omitted)); Quarantino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir.1999) (“The lodestar may be adjusted based on several factors, including in particular the results obtained .... ” (internal quotation marks and citation omitted)); Roe v. Cheyenne Mountain Conference Resort, Inc., 124 F.3d 1221, 1233 n. 8 (10th Cir.1997) (“The lodestar figure may be adjusted to suit the particular circumstances of the case, especially where the degree of success achieved is exceptional.”); Shipes v. Trinity Indus., 987 F.2d 311, 320 (5th Cir.1993) (noting that upward adjustments based on quality of representation and results obtained are proper where supported by specific evidence on record and detailed findings by lower courts). In each of these cases, the court recognized (at least implicitly) that Delaware Valley I did not fundamentally alter the controlling law regarding enhancements for outstanding performance and results. Judge Carnes’ opinion thus conflicts not only with two decades of our own jurisprudence, but also with the decisions of numerous other courts.
II.
In this case, the district court made detailed findings as to why the lodestar figure did not fully reflect the quality of representation and the exceptional results achieved. As to the former, the court found that “the quality of service rendered by class counsel, including their extraordinary commitment of capital resources, was far superior to what consumers of legal services in the legal marketplace in Atlanta could reasonably expect to receive for the rates used in the lodestar calculation.” Kenny A. ex rel. Winn v. Perdue (Kenny A. III), 454 F.Supp.2d 1260, 1288 (N.D.Ga.2006). In support of that conclusion, the court cited affidavits submitted by four attorneys with extensive experience in the Atlanta legal market, particularly in the area of class action litigation. See id. at 1290. These attorneys each stated that the hourly rates claimed by counsel would not provide a fee sufficient to reflect the value of the services performed. For example, Henry D. Fellows, Jr. testified:
In the current Atlanta market for legal services, the Standard Hourly Rates specified in the Declarations of Marcia Robinson Lowry and Jeffrey O. Bram-lett would be generally inadequate and insufficient to induce lawyers of comparable skill, judgment, professional reputation and experience to perform the necessary services to prosecute a case of this magnitude on terms where the lawyers are not paid on an ongoing basis as the work is being performed, are required to advance case expenses of $1.7 million over a three year period with no ongoing reimbursement, and the lawyers’ ability to recover a fee and expense reimbursement are completely contingent on the outcome of the case.
[Fellows Deck, R32:495:Ex.G:7; see also Knowles Deck, R32:495:Ex.D:ll; Chandler Deck, R32:495:Ex.F:7; Rawls Deck, R32:495:Ex.H:7.] In the view of three of these attorneys, a 1.5-2 multiplier was necessary to bring the fee award into line with awards in comparable class action litiga-tions in the Atlanta market:
Taking into account the work required to achieve the results obtained for the plaintiff class in this case, the level of expense and risk entailed for class coun *1248 sel to prosecute this case over a three-year period with recovery of fee and investment in advanced case expenses, and fees actually awarded by courts in class actions in this district in securities, antitrust and. other types of non-civil rights cases presenting comparable complexity and risk, a multiplier of no less than 1.5-2 times the lodestar amount ... would yield a reasonable fee consistent with prevailing prices in the Atlanta legal market for legal services of comparable value.
[Fellows Decl., R32:495:Ex.G:8; see also Chandler Decl., R32:495:Ex.F:8; Rawls Decl., R32:495:Ex.H:8.]
Judge Carnes’ opinion discounts these affidavits on the ground that the factors identified in them — the lack of ongoing payment, the advancement of case expenses, and the contingent nature of the fee recovery and reimbursement — cannot support an enhancement. I agree with that conclusion insofar as it pertains to contingency. See City of Burlington v. Dague, 505 U.S. 557, 567, 112 S.Ct. 2638, 2643-44, 120 L.Ed.2d 449 (1992) (holding that enhancement for contingency is not permitted under fee-shifting statutes). The other two factors, Judge Carnes believes, have already been accounted for because the lodestar was calculated using current rather than historic hourly rates. See ante at 1227-28 (citing Norman, 836 F.2d at 1302). But we did not hold in Norman that the use of current rates will always be sufficient to compensate for delayed payment. Here, the affidavit testimony indicates that the rates used to calculate the lodestar, although current, would be inadequate to provide a reasonable fee in light of the exceptionally high commitment of capital resources by the attorneys and the three-year delay in receipt of payment. The district court properly relied on this evidence in concluding that an upward adjustment was warranted.
Judge Carnes’ opinion also faults the district court for failing to give sufficient weight to the testifying attorneys’ own interest in securing a high fee award for plaintiffs’ counsel in this case. But determinations as to the credibility and the weight of testimonial evidence are clearly within the purview of the district court in these circumstances. See Childrey v. Bennett, 997 F.2d 830, 834 (11th Cir.1993) (“[I]t is the exclusive province of the judge in non-jury trials to assess the credibility of witnesses and to assign weight to their testimony.”). Such determinations always involve an assessment of the factors bearing upon a witness’s objectivity. It cannot reasonably be contended that the able and experienced district judge in this case never considered the possibility that the affiants — who are prominent Atlanta attorneys — might be known by plaintiffs’ counsel, or that they could derive an indirect benefit from the prece-dential value of a high fee award. The court concluded, however, that these considerations were outweighed by other factors that bolstered the probative value of their testimony. These included the court’s familiarity with the affiants, then-reputations in the Atlanta legal community, and their experience in complex class action litigations. See Kenny A. III, 454 F.Supp.2d at 1290. Absent any showing of clear error, it is improper for us to second-guess the court’s determination, even if we would have made a different credibility finding or weighed the evidence differently. Johnson v. DeSoto County Bd. of Comm’rs, 72 F.3d 1556, 1561 n. 5 (11th Cir.1996) (“The credibility of competing experts and the weight to be accorded the evidence submitted by both sides will, of course, be decided by the district court, subject only to clearly erroneous review on appeal.”); Jones v. Childers, 18 F.3d 899, 908 (11th Cir.1994) (“We ... will not presume to second guess the *1249 trial judge’s assessment of the credibility of the witnesses and the weight assigned to their testimony.”). Such deference is particularly appropriate in this case, given that the defendants did not introduce evidence challenging the attorneys’ conclusion that an enhancement was necessary to yield a fee consistent with prevailing rates in the Atlanta legal market for similar services.
In addition to the affidavits, the district court took into account its personal observations of the attorneys’ performance in this case:
[T]he court finds that the superb quality of [counsel’s] representation far exceeded what could reasonably be expected for the standard hourly rates used to calculate the lodestar. Quite simply, plaintiffs’ counsel brought a higher degree of skill, commitment, dedication, and professionalism to this litigation than the Court has seen displayed by the attorneys in any other case during its 27 years on the bench. The foster children of Fulton and DeKalb Counties were indeed fortunate to have such unparalleled legal representation, and the Court would be remiss if it failed to compensate counsel for this extraordinary level of service to their clients.
Kenny A. III, 454 F.Supp.2d at 1288-89; see also id. at 1286 (“[B]ased upon the Court’s own substantial experience and familiarity with the prevailing rates in Atlanta, and the Court’s observation of the stellar performance of plaintiffs’ counsel throughout this long and difficult case, it finds the requested hourly rates eminently fair and reasonable. If anything, they are too low.”).
In the area of fee awards, it is well established that “[t]he court ... is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment ... as to value.” Norman, 836 F.2d at 1303 (quoting Campbell v. Green, 112 F.2d 143, 144 (5th Cir.1940)). As part of this determination, the court may factor in its personal assessment of the quality of counsel’s representation. See Duckworth v. Whisenant, 97 F.3d 1393, 1397 (11th Cir.1996). The district court thus did not err in relying on these considerations as additional grounds for an enhancement.
As to the results obtained, the court found that the plaintiffs’ success was “truly exceptional.” Kenny A. III, 454 F.Supp.2d at 1289. The court provided a detailed summary of the Consent Decree entered into by the parties, finding that it provided “sweeping relief to the plaintiff class” and was “comprehensive in its scope and detailed in its coverage.” Id. Based on these considerations, the court found the result achieved to be “extraordinary,” particularly in light of “the contentiousness of the litigation, complexity of the issues and the uncertainties and delays of further litigation.” Id. at 1290 (internal quotation marks omitted). To underscore the truly exceptional nature of the outcome, the court again cited its own experience: “After 58 years as a practicing attorney and federal judge, the Court is unaware of any other case in which a plaintiff class has achieved such a favorable result on such a comprehensive scale.” Id.
Judge Carnes’ opinion takes issue with the court’s statement that the remedial measures established by the Consent Decree go beyond the relief the plaintiffs likely would have obtained had they prevailed at trial. We have recognized, however, that the unexpected nature of a result is relevant to the determination of whether it is exceptional. See Norman, 836 F.2d at 1302 (“[A]n outcome that is not unexpected in the context of extant substantive law will not ordinarily be exceptional.”). In finding exceptional results *1250 here, the district court did not err in considering the fact that the remedies agreed upon by the parties exceeded its own expectations as to the nature and scope of relief likely to result from this litigation. See id. (“Exceptional results are results that are out of the ordinary, unusual or rare.”).
Moreover, other courts have recognized that results similar to those obtained here can justify an enhancement. For example, in Hyatt v. Apfel, 195 F.3d 188 (4th Cir.1999), the Fourth Circuit affirmed an enhancement for results obtained where the plaintiff class prevailed in challenging a Social Security Administration policy pertaining to disability benefits. The enhancement was proper, the court held, because the plaintiffs “succeeded in bringing about fundamental change to a recalcitrant agency,” the challenged policy affected the determination of hundreds of thousands of disability claims, and the government promulgated new national regulations in response to the litigation. Id. at 191-92. The court also found it significant that “[tjhese results were obtained in the face of monumental resistance [by the government] on every claim.” Id. at 192. These factors closely resemble those involved in this case, where the plaintiffs succeeded in effecting systemic changes to the foster care systems in Fulton and DeKalb Counties, in spite of considerable opposition by defendants.
Likewise, in Shipes v. Trinity Industries, 987 F.2d 311 (5th Cir.1993), the Fifth Circuit held that an enhancement might be warranted for the results obtained in a “lengthy and protracted” Title VII class action. Id. at 322. The court noted that the plaintiffs victory was complete on all issues and resulted in both substantial monetary damages and, “very importantly, future protection against discrimination in the form of injunctive relief.” Id. The Consent Decree in this case provides similarly comprehensive relief. It remedies numerous existing deficiencies in the delivery of foster care services and provides safeguards against future unlawful conduct by defendants. These results are no less exceptional than those obtained in Shipes.
Additionally, we have recognized that the public benefit created by a lawsuit is an important factor in the determination of a reasonable fee award. In Villano v. City of Boynton Beach, 254 F.3d 1302 (11th Cir.2001), we held that the district court erred in reducing a plaintiffs fee award without considering the public benefit of the case. Id. at 1307. We stated that “[pjublic benefit is a distinct measure of succéss in civil rights actions,” and thus it must be accounted for in the calculation of a fee award. Id. We further recognized that the vindication of a constitutional right against a government institution heightens a lawsuit’s public benefit by deterring future unconstitutional conduct by public officials. Id.; see also Popham v. City of Kennesaw, 820 F.2d 1570, 1580 (11th Cir.1987) (“The affirmation of constitutional principles produces an undoubted public benefit that courts must consider in awarding attorneys’ fees under Section 1988.”). Accordingly, we instructed the district court as follows:
On remand, the district court must examine the qualitative value of [plaintiffs] successes. In doing so, the court needs to account for the vital role private litigation plays in the enforcement of civil rights, the difficulties involved in sustaining those lawsuits, the heightened importance of such lawsuits when the defendant is a public body, and the public benefit that occurs when those lawsuits ultimately vindicate a constitutional right.
Villano, 254 F.3d at 1308 (citation omitted).
*1251 Although Villano involved the reduction of a fee award rather than an enhancement, its principles are relevant to this case. Through the provisions of the Consent Decree, the plaintiffs have obtained redress for the constitutional violations alleged in the complaint, thereby vindicating the constitutional rights of the class members. Given the scope of the remedial measures agreed to by the defendants, the public benefit created by this litigation is enormous. See Norman, 836 F.2d at 1302 (stating that vindication of class-wide rights is generally more significant than relief for isolated constitutional violation). This consideration further supports the conclusion that an enhancement for exceptional success is warranted in this case.[4]
III.
I find no abuse of discretion in the district court’s fee award. The court made detailed findings as to why the lodestar did not fully reflect the quality of representation and the results achieved in this case, and those findings are supported by specific evidence in the record. Because I conclude that the district court’s decision is consistent with controlling Supreme Court and Eleventh Circuit precedents, I concur only in the result.

. See Blum, 465 U.S. at 899, 104 S.Ct. at 1549 (stating that quality of representation "may justify an upward adjustment only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rales charged and that the success was 'exceptional' ” (quoting Hensley, 461 U.S. at 435, 103 S.Ct. at 1940)); id. at 900, 104 S.Ct. at 1549 ("Absent specific evidence to the contrary, we cannot say that [the] rates ... for these three attorneys do not fully reflect the quality of their representation.").

. Judge Carnes’ opinion also asserts that enhancements for superior performance cannot be reconciled with City of Burlington v. Dague, 505 U.S. 557, 112 S.Ct. 2638, 120 *1246 L.Ed.2d 449 (1992), in which the Court held that enhancements for contingency are not permitted. As Judge Carnes' opinion notes, the Dague Court defined an attorney’s contingent risk in a particular case as the product of "(1) the legal and factual merits of the claim, and (2) the difficulty of establishing those merits.” Id. at 562, 112 S.Ct. at 2641. However, Dague is inapposite because, unlike an attorney’s level of risk, the quality of his or her representation cannot be defined solely by reference to these two factors. Two attorneys could bring identical claims, the merits of which are equally difficult to establish. Even if both attorneys prevail, it does not follow that their respective performances were necessarily equal in quality. In any given case, a host of factors beyond those relating specifically to the merits of a claim are pertinent to assessing the quality of an attorney's representation. Nothing in Dague precludes courts from considering these additional factors as possible grounds for an enhancement.

. Since NAACP and Norman were decided, we have repeatedly reiterated their understanding of the Court’s teachings. See Ass’n of Disabled Ams. v. Neptune Designs, Inc., 469 F.3d 1357, 1359 (11th Cir.2006) (per curiam) ("The court may then adjust the lodestar to reach a more appropriate attorney’s fee, based on a variety of factors, including the degree of the plaintiff's success in the suit.”); Villano v. City of Boynton Beach, 254 F.3d 1302, 1308 (11th Cir.2001) ("If the court determines that the result obtained was an excellent result, then the award of fees 'will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified.’ ” (quoting Hensley, 461 U.S. at 435, 103 S.Ct. at 1940)); Duckworth v. Whisenant, 97 F.3d 1393, 1396 (11th Cir.1996) (per curiam order incorporating district court decision into opinion) ("After determining the lodestar, the court may adjust the amount depending upon a number of factors, including the quality of the results and representation of the litigation.”); Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir.1994) (per curiam) ("[The] ‘lodestar’ may then be adjusted for the results obtained.”).

. Judge Carnes’ opinion argues that the public benefit created by a lawsuit cannot be a factor supporting an enhancement because every suit that vindicates a federal right benefits the public in some way. Therefore, he argues, taking the public benefit into account would result in an enhancement in every successful fee case. I disagree. The fact that every vindication of federal rights confers some public benefit does not mean that the benefit is equal in every case. The present case underscores this point. The district court’s opinion demonstrates that the public benefit created here was truly exceptional, far exceeding that achieved in the majority of cases of this type. See Kenny A. III, 454 F.Supp.2d at 1290 ("After 58 years as a practicing attorney and federal judge, the Court is unaware of any other case in which a plaintiff class has achieved such a favorable result on such a comprehensive scale."). Taking this factor into account is proper under the "results obtained” analysis, which asks whether the outcome in the case was "out of the ordinary, unusual or rare.” Norman, 836 F.2d at 1302.