[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 25, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-14016
Non-Argument Calendar

_____

D. C. Docket No. 05-01276-CV-ORL-19-JGG

GLEN E. VADIMSKY,

Plaintiff-Appellant,

versus

CITY OF MELBOURNE, a
municipal corporation,
OFFICER BRIAN T. DOHANEY,
in his individual capacity,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(March 25, 2008)**

Before BIRCH, PRYOR, and KRAVITCH, Circuit Judges.

PER CURIAM:

Glen E. Vadimsky appeals the denial of his motions for a directed verdict and for judgment as a matter of law and/or a new trial. For the reasons stated below, we affirm the district court.

## BACKGROUND

On May 23, 2002, Vadimsky and three co-workers, Jonathan Chadman, Ed Robinson, and another man, went to the home of Jonathan's brother, Nicholas Chadman, and his fiancée, Kerri Welch, in Melbourne, Florida. The co-workers had spent the evening together at a bar and then at a Hooters restaurant for dinner. Vadimsky testified that he was not intoxicated when he arrived at the house, but Welch testified that all four appeared drunk and were acting belligerently. A fight broke out between Nicholas and Jonathan in the front yard of the home. Welch testified that she did not see Vadimsky participate in the fight, but did see him get punched in the face, knocked unconscious, and then kicked twice in the back while on the ground.

Welch dialed 911 and reported that a group of people were fighting in her front yard and that one of them, later determined to be Robinson, had kicked in her front door. She stated that the individuals were leaving the scene in their pickup truck, and provided a description of the vehicle and the direction it was headed.

2

Melbourne police officers were dispatched to the scene of the fight, knowing only that a disturbance had occurred which included the door of a residence being kicked in. Officer Saddof arrived at the Chadman/Welch home to investigate the disturbance. After interviewing Welch and other witnesses, Saddof determined that the fight had involved nothing more than misdemeanors. Saddof also determined that Robinson alone needed to be detained on account of the property damage to the door.

On his way to the house, Officer Lynch observed a green Ford Ranger pickup truck fitting the description from the 911 dispatch operator within a mile of the scene, and he stopped the vehicle. Officer Dohaney, in a separate police vehicle, pulled up behind Officer Lynch and the green pickup truck. Officer Lynch approached the driver's side of the vehicle at the same time Dohaney approached the passenger's side. Lynch and Dohaney observed that the rear window of the truck was smashed, the driver's nose was bleeding, and he could smell alcohol on the driver's breath. Some of the occupants were yelling obscenities at the officers. Because there were four occupants of the truck and only two officers and because at that time Lynch knew that there had been a violent disturbance possibly involving these people, he was afraid for his and Dohaney's safety. Lynch therefore enacted the Melbourne Police Department's emergency radio traffic

3

procedure which prohibited police radio communication for all other officers until Lynch determined that the situation at the vehicle stop was under control and that he would not need to call for additional assistance.

As Officer Dohaney approached the passenger side from the rear of the truck, Vadimsky exited the vehicle and began to walk away from Dohaney toward the front of the vehicle. In their trial testimonies, Dohaney and Vadimsky gave different accounts of what happened next.

According to Dohaney, he instructed Vadimsky to stay by the truck and that he was not free to leave. Vadimsky continued to walk away, swore at Officer Dohaney and responded, "I don't have to listen to you." Dohaney gave Vadimsky more commands to stop, but Vadimsky never stopped. Dohaney then placed Vadimsky in an "escort hold" and walked him to the rear of the vehicle. Dohaney placed Vadimsky against the truck so that he could not get away. When Dohaney released Vadimsky's right arm to see Lynch's progress with the other occupants of the vehicle, Vadimsky tried to break free and Dohaney again grabbed his right arm. They struggled together and Dohaney gave several commands to Vadimsky to "stop resisting." Vadimsky continued to refuse to comply and Dohaney informed Vadimsky that he was under arrest, took Vadimsky to the ground, handcuffed him, and placed him in the back of the patrol car. Dohaney acknowledged bending

4

Vadimsky's wrist while on the ground in a "pain compliance procedure" which he admitted may cause injury and pain if the subject resists.

Vadimsky testified that he got out of the truck when it stopped and began pacing back and forth, holding his head. When Officer Dohaney approached and asked him to stand still, Vadimsky complied. Officer Dohaney then held Vadimsky's right arm against his back and bent Vadimsky down against the tire of the truck. Dohaney ordered Vadimsky to get down on the ground which Vadimsky believed he could not do without hitting his head on the car door. When Vadimsky hesitated, Dohaney knocked Vadimsky's legs out from under him and Vadimsky fell to the ground on top of his left arm and hit his head on the ground. Dohaney then picked Vadimsky up, handcuffed him, and placed him in the patrol car.

After Vadimsky was seated in the patrol car and the remaining occupants of the truck were under control, the emergency radio traffic control was lifted. It was only that point that Sadoff was able to reach Dohaney and Lynch and inform them that no felony had been committed at the Chadman/Welch home and that only Robinson needed to be detained further.

As a result of these events, Vadimsky filed suit in Florida state court against the City of Melbourne and Officer Dohaney, as an individual. Vadimsky's complaint alleged false imprisonment, malicious prosecution, battery, and a 42

5

U.S.C. § 1983 claim against Dohaney. The Defendants removed the case to federal court where a jury trial was conducted. At the close of evidence, Vadimsky and the Defendants each filed motions for a directed verdict. The judge denied both motions finding that there was "a dispute of fact as to whether the plaintiff complied with the officer's position and orders or not." After a verdict for the Defendants, Vadimsky filed a motion requesting judgment as a matter of law and/or a new trial, which was denied. Vadimsky then filed this appeal.

## STANDARD OF REVIEW

This court reviews the denial of a motion for judgment as a matter of law de novo, and will reverse the trial court "only if the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict." Action Marine, Inc. v. Continental Carbon Inc., 481 F.3d 1302, 1309 (11th Cir. 2007) (internal citation omitted). The denial of a motion for a new trial is reviewed for an abuse of discretion, with particular deference where, as here, a new trial is denied and the jury's verdict is left undisturbed. Id. All reasonable inferences are drawn in favor of the jury's verdict. United States v. Castro, 89 F.3d 1443, 1450 (11th Cir. 1996). We reverse findings of fact only if clearly erroneous. Billings v. UNUM Life Ins. Co. of America, 459 F.3d 1088, 1092 (11th Cir. 2006).

**DISCUSSION**

Vadimsky does not contest the propriety of the stop of the vehicle; he challenges only the right of the police officer to detain him, as a passenger, during the vehicle stop. Vadimsky contends that no reasonable suspicion extended to him as a passenger, and that he was free to leave when the police pulled over the truck. Because he should have been free to leave under the law, Vadimsky's argument continues, Officer Dohaney acted unlawfully by preventing him from leaving. And, therefore, Vadimsky should not have been arrested for resisting Officer Dohaney because by trying to keep Vadimsky by the vehicle, Dohaney was not executing a lawful duty.

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. Amend. IV. Generally, a search is reasonable only if supported by a warrant based on probable cause. Horton v. California, 496 U.S. 128, 133 (1990). "The courts have, however, fashioned exceptions to the general rule, recognizing that in certain limited situations the government's interest in conducting a search without a warrant may outweigh the individual's privacy interest." U.S. v. Gordon, 231 F.3d 750, 754 (11th Cir. 2000). One such exception is a "Terry stop." See Terry v. Ohio, 392 U.S. 1 (1968). Under Terry, "even in the absence of probable cause, police may stop persons and detain them briefly in order to

7

investigate a reasonable suspicion that such persons are involved in criminal activity." U.S. v. Pruitt, 174 F.3d 1215, 1219 (11th Cir. 1999). To be reasonable, the police officer must "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21. Reasonable suspicion is judged by the totality of the circumstances. United States v. Sokolow, 490 U.S. 1, 8 (1989).

Florida law has codified a similar rule under its "Stop and Frisk law." Fla. Stat. § 901.151; see Tillman v. State, 934 So.2d 1263, 1273 (Fla. 2006) (noting that the standard for evaluating the propriety of a investigatory stop by the police under Florida law is "consonant with the holding in Terry v. Ohio").

At the time that Officer Dohaney approached the green truck, he held a reasonable suspicion that all occupants of the green truck had been involved in violent and criminal activity at the Chadman/Welch house. See Terry, 392 U.S. at 21-22 (noting that the standard of reasonableness of a particular seizure is whether "the facts available *at the moment of the seizure* [would] warrant a man of reasonable caution in the belief that the action taken was appropriate") (emphasis added, internal quotation omitted). Officer Dohaney had heard from the police dispatch that a violent altercation had occurred, and that these potential violent perpetrators had fled in a truck matching the description of the stopped vehicle.

8

Officer Dohaney had been informed that the front door of a residence had been knocked down, indicating that perhaps a burglary or other serious offense had been attempted. As he approached the vehicle, Officer Dohaney noticed the broken windshield and the bleeding driver, which contributed to the reasonable suspicion that the vehicle occupants had been involved in criminal activity. This reasonable suspicion of criminal activity justified a temporary seizure for the purpose of questioning and investigation. Florida v. Royer, 460 U.S. 491, 498 (1983). Officer Dohaney did not learn that the disturbance at the Chadman/Welch home was a fight, rather than a burglary or other felony, nor that Robinson alone should be arrested, until after his interaction with Vadimsky. When Dohaney encountered Vadimsky, he suspected that all occupants of the car had been involved in the incident, and thus he was justified in detaining all occupants, including Vadimsky, until he could investigate and determine who, if anyone, had actually participated in criminal activity. See United States v. Cortez, 449 U.S. 411, 421-22 (1981) (noting that reasonable suspicion existed to justify a vehicle stop to question all passengers regarding possible illegal immigrant status); see also Courson v. McMillian, 939 F.2d 1479, 1493 (11th Cir. 1991) (noting that an officer justifiably detained driver and passengers where he held reasonable suspicion that all three may have been involved in criminal activity and he needed to wait for back-up).

As support for his argument that Officer Dohaney did not have a right to detain him, Vadimsky points to Florida caselaw involving traffic stops wherein Florida courts have held that passengers are free to leave the site of the stop. See Wilson v. State, 734 So.2d 1107, 1108 (Fla. App. 4th Dist. 1999). The United States Supreme Court called this into question, however, in Brendlin v. California, where it held that a passenger is seized at a traffic stop and so may challenge the constitutionality of the stop if the passenger acquiesced and remained on the site of the stop. — U.S. —, 127 S.Ct. 2400, 2403 (2007). Brendlin addressed the issue of whether a passenger who chooses to stay at the stop has actually been seized, rather than whether the police officer acted permissibly by requiring the passenger to stay. Brendlin did note, in dicta, that it is "reasonable for passengers to expect that a police officer at the scene of a crime, arrest, or investigation will not let people move around in ways that could jeopardize his safety." Id. at 2407 (citing Maryland v. Wilson, 519 U.S. 408 (1997)). Whether or not Wilson v. State survives Brendlin, Dohaney's actions are still constitutionally permissible because the officer had a well-founded suspicion of Vadimsky's criminal activity and had reason to fear for his safety when Vadimsky exited the vehicle and began walking toward the front of the vehicle. See Wilson, 734 So.2d at 1111 (limiting its holding to seizures of "someone who is not suspected of any violation of the law

10

and who does not pose an articulable suspicion of danger to officer safety"); see also State v. McClendon, 845 So.2d 233, 235-36 (Fla. App. 4th Dist. 2003) (distinguishing Wilson where there is an articulable reason to detain the passenger for officer safety).

Officer Dohaney also did not violate any of Vadimsky's rights by arresting him for resisting or obstructing a police officer in the execution of a lawful duty. We have already established that Officer Dohaney held a reasonable suspicion that all occupants of the vehicle, including Vadimsky, had been involved in criminal activity and that, therefore, Officer Dohaney acted lawfully in detaining Vadimsky. Because Dohaney was conducting a lawful Terry stop, he acting lawfully by pursuing Vadimsky for trying to leave the stop. Jacobson v. State, 476 So.2d 1282, 1287 (Fla. 1985). Officer Dohaney also acted lawfully by arresting Vadimsky for resisting and obstructing his lawful efforts to detain Vadimsky. Fla. Stat. § 843.02 ("Whoever shall resist, obstruct, or oppose any officer . . . in the lawful execution of any legal duty . . . shall be guilty of a misdemeanor of the first degree."). Vadimsky testified that he complied with every instruction Officer Dohaney gave him and never resisted. The jury verdict in favor of Officer Dohaney and the City of Melbourne, however, indicates that the jury found Officer Dohaney more credible on this issue. We see no sound basis to disturb that finding.

11

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's denial of the motions for a directed verdict and for judgment as a matter of law and/or a new trial.